KAREN B. ALSTON, APPELLANT, V.
HORMEL FOODS CORPORATION, APPELLEE.

730 N.W.2d 376

Filed April 20, 2007.   No. S-05-1488.

Betty L. Egan and Kylie A. Wolf, of Walentine, O'Toole, McGuillan & Gordon, for appellant.

James L. Quinlan and Kristin A. Crone, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

The plaintiff in this appeal was allegedly injured by exposure to smoke and odors. She was first exposed to the alleged hazards in 1990 or 1991, her medical condition was diagnosed by 1996, and she was last exposed to the alleged hazards in November 1999. She did not file her complaint against the alleged tortfeasor until October 2003. The issue presented in this appeal is when the 4-year statute of limitations[1] began to run on the plaintiff's tort claim. The plaintiff asks this court to adopt the "continuing tort doctrine" and conclude that the statute of limitations began to run, not from the date of the injury or her discovery of the injury, but from her last exposure to the alleged hazard.

## BACKGROUND

Karen B. Alston, the plaintiff, began working for the U.S. Department of Agriculture (USDA) as a meat inspector in September 1988, and held that position until November 1999. In 1990 or 1991, she was assigned to the Hormel Foods Corporation (Hormel) plant in Fremont, Nebraska. In her deposition, Alston stated that while she was working at the Hormel site, "on the kill floor there was an excessive amount of smoke, there w[ere] excessive amounts of odor coming from the smokehouse, which I feel played a tremendous part in my health problems." Alston said that the smoke and odor aggravated her asthma and exacerbated her lower airway reactivity. Alston said it was "almost impossible to breathe in that establishment." Alston claimed that because of her respiratory problems, she also suffered from depression.

In May 1996, Alston was hospitalized for her condition. She was suffering from significant wheezing, shortness of breath, and dyspnea on exertion and was treated with intravenous fluids, intravenous steroids, and aerosol treatments. The principal diagnosis included acute exacerbation of asthmatic bronchitis and allergic rhinitis. Alston was discharged after 3 days in the hospital and was prescribed oral and aerosol medications.

---

[1] See Neb. Rev. Stat. § 25-207 (Reissue 1995).

Alston missed work in November 1997 because of exacerbation of her asthma. In March 1999, Alston completed and filed an application for immediate retirement from her USDA employment. In her application, Alston wrote that she had become disabled from her position in approximately April 1995. She wrote about her condition at length and stated, among other things, that her disease interfered with the performance of her duties because "[t]he work environment bring[s] on asthma conditions which [result] in a secondary condition." Alston also wrote that "[t]he final results are moderate depression, shortness of breath, extreme frustration and complete fatigue." She had used her sick leave and annual leave because, she wrote, she "[had] to leave [her] position when the environment [became] intolerable." She characterized the restrictions on her activities, among others, as avoiding "humid conditions, to avoid vapors, smoke, fumes and to avoid industrial environments."

In November 1999, Alston's doctor wrote a letter to Alston's attorney stating that Alston had "significant asthma which is exacerbated by her environmental exposure at her place of employment." In December 1999, an allergy and asthma specialist opined in a letter to Alston's attorney that Alston's "current symptoms seem to show a lack of any significant improvement in terms of symptom control" and his "suspicion" was that "that will be the same until we get her away from her current work environment. Hopefully, with a change in work environment, she will have improved asthma symptom control."

Alston filed a complaint against Hormel in the district court on October 23, 2003. The record shows that Alston terminated her employment at Hormel in November 1999. Alston alleged in her complaint that excessive smoke and odor periodically reached the kill floor where Alston worked, Hormel had notice of the smoke and odor, and Alston's asthma was exacerbated by the smoke and odor. Alston alleged that Hormel had a duty to provide Alston with a safe place to work and breached that duty by causing, allowing, or failing to prevent the smoke and odor from reaching the kill floor. Hormel alleged an affirmative defense of the statute of limitations and filed a corresponding motion for summary judgment.

The district court concluded that Alston was aware she was affected by disabling conditions in her work environment as early as April 1995 or 1996 and that she was certainly aware of the nature and extent of her injuries by March 1999, when she applied for retirement. Thus, the court concluded that the 4-year statute of limitations began to run on Alston's claim no later than March 1999, and her complaint, filed in October 2003, was time barred. The court entered summary judgment for Hormel, and Alston appeals.

## ASSIGNMENT OF ERROR

Alston assigns that the district court erred in sustaining Hormel's motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[2] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[3]

## ANALYSIS

Section 25-207 provides that a tort action, described as "an action for an injury to the rights of the plaintiff, not arising on contract," "can only be brought within four years." It has generally been stated that a statute of limitations begins to run as soon as the claim accrues, and an action in tort accrues as soon as the act or omission occurs.[4] But while § 25-207 provides no exception for causes of action that are not discovered before the statute of limitations expires,[5] we have held that in certain

[2] *City of Lincoln v. Hershberger*, 272 Neb. 839, 725 N.W.2d 787 (2007).

[3] *Id.*

[4] See *Shlien v. Board of Regents*, 263 Neb. 465, 640 N.W.2d 643 (2002).

[5] Compare Neb. Rev. Stat. §§ 25-222 and 25-223 (Reissue 1995).

categories of cases, the statute of limitations begins to run on the date when the party holding the claim discovers or, in the exercise of reasonable diligence, should have discovered the existence of the injury.[6]

In this case, Alston argues that because she alleged that Hormel engaged in a course of continuing tortious conduct, the statute of limitations ran from her last exposure to the alleged hazard, which was less than 4 years before she filed her complaint. But it is not disputed that Alston discovered or should have discovered the effect of Hormel's alleged conduct more than 4 years prior to the filing of her complaint. Hormel argues that Alston's claim accrued when she discovered or should have discovered her injury; thus, Hormel asserts that Alston's claim is barred by § 25-207. Resolving these competing contentions will require us to examine the continuing tort doctrine generally and then consider how the discovery rule affects the statute of limitations for a continuing tort.

### DAMAGES CAUSED BY CONTINUING TORTIOUS CONDUCT WITHIN STATUTE OF LIMITATIONS ARE NOT TIME BARRED

It is well accepted that when an individual is subject to a continuing, cumulative pattern of tortious conduct, capable of being terminated and involving continuing or repeated injury, the statute of limitations does not run until the date of the last injury or cessation of the wrongful action.[7] This "continuing tort doctrine" requires that a tortious act—not simply the continuing ill effects of prior tortious acts—fall within the limitation period.[8] Nor can the necessary tortious act merely be the failure to right a wrong committed outside the statute of limitations, because if it were, the statute of limitations would never run because a

---

[6] See *Teater v. State*, 252 Neb. 20, 559 N.W.2d 758 (1997).

[7] See, *Copier Word Processing v. WesBanco Bank*, 220 W. Va. 39, 640 S.E.2d 102 (2006); *Beard v. Edmondson and Gallagher*, 790 A.2d 541 (D.C. 2002); *Wilson v. Wal-Mart Stores*, 158 N.J. 263, 729 A.2d 1006 (1999). See, also, *Anonymous v. St. John Lutheran Church*, 14 Neb. App. 42, 703 N.W.2d 918 (2005), citing *Curtis v. Firth*, 123 Idaho 598, 850 P.2d 749 (1993).

[8] See, *Anonymous, supra* note 7; *Gettis v. GMEDC*, 179 Vt. 117, 892 A.2d 162 (2005); *Beard, supra* note 7.

tort-feasor can undo all or part of the harm.[9] Rather, when a tort is continuing, although the initial tortious act may have occurred longer than the statutory period prior to the filing of an action, an action will not be barred if it can be based upon the continuance of that tort within that period.[10]

There is some disagreement as to whether the continuing tort doctrine is a tolling doctrine or a doctrine of accrual—that is, whether continuing tortious conduct tolls the running of the statute of limitations with respect to a claim or whether the claim accrues as the tort continues.[11] But the better-reasoned view is that it is a doctrine of accrual. As explained by the Seventh Circuit, "[t]olling rules create defenses; they are optional with the plaintiff; he can sue as soon as his claim accrues."[12] When an alleged tort-feasor's conduct is continuing, however, the plaintiff can sue only with respect to what the tort-feasor has already done, not what the tort-feasor might continue to do; so, it makes little sense to describe the continuing tort as "tolling" the statute of limitations with respect to injuries not yet inflicted. Instead, "the usual and it seems to [the Seventh Circuit] the correct characterization of the doctrine . . . is that it is a doctrine governing accrual."[13]

The more significant difference of opinion concerns whether a claim based on a continuing tort may be brought for all damages caused by the tort or only the damages caused by tortious conduct within the statutory limitations period. As explained by the Eleventh Circuit:

> Under the pure version of the continuing tort theory, a cause of action for any of the damages a plaintiff has suffered does not "accrue" until the defendant's tortious conduct ceases.[14] Under the pure continuing tort theory, a plaintiff

---

[9] See *Gettis, supra* note 8.

[10] *Thorndike v. Thorndike*, 154 N.H. 443, 910 A.2d 1224 (2006).

[11] See *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001). See, also, *Wilson, supra* note 7.

[12] *Id.* at 319.

[13] *Id.*

[14] See, e.g., *Everhart v. Rich's, Inc.*, 229 Ga. 798, 194 S.E.2d 425 (1972).

may recover for all the harm he has suffered, not just that suffered during the limitations period.[15] By contrast, the modified version of that theory allows recovery for only that part of the injury the plaintiff suffered during the limitations period.[16]

Thus, some courts hold that where a tort is "continuing," the plaintiff can reach back to the beginning even if it lies outside the statutory limitations period.[17] But other courts have concluded, in various contexts, that even if claims based on tortious conduct outside the statutory limitations period are time barred, claims based on subsequent tortious activity are not.[18] As explained by the Supreme Court of Missouri:

> [I]f the wrong done is of such a character that it may be said that all of the damages, past and future, are capable of ascertainment in a single action so that the entire damage accrues in the first instance, the statute of limitation begins to run from that time. If, on the other hand, the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being

---

[15] See *Taylor v. Meirick*, 712 F.2d 1112 (7th Cir. 1983).

[16] *White v. Mercury Marine, Div. of Brunswick, Inc.*, 129 F.3d 1428, 1430 (11th Cir. 1997).

[17] See, e.g., *Heard, supra* note 11; *Page v. United States*, 729 F.2d 818 (D.C. Cir. 1984); *Meadows v. Union Carbide Corp.*, 710 F. Supp. 1163 (N.D. Ill. 1989); *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 798 N.E.2d 75, 278 Ill. Dec. 228 (2003); *Beard, supra* note 7; *Wilson, supra* note 7; *Curtis, supra* note 7; *Ambling Management Co. v. Purdy*, 283 Ga. App. 21, 640 S.E.2d 620 (2006); *Anderson v. State*, 88 Haw. 241, 965 P.2d 783 (Haw. App. 1998); *Tennessee Eastman Corp. v. Newman*, 22 Tenn. App. 270, 121 S.W.2d 130 (1938).

[18] See, e.g., *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1971); *Santiago v. Lykes Bros. S.S. Co., Inc.*, 986 F.2d 423 (11th Cir. 1993); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988); *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356 (3d Cir. 1986); *Daniels v. Beryllium Corporation*, 211 F. Supp. 452 (E.D. Pa. 1962); *Taylor v. Culloden Public Service Dist.*, 214 W. Va. 639, 591 S.E.2d 197 (2003); *Russo Farms v. Bd. of Educ.*, 144 N.J. 84, 675 A.2d 1077 (1996); *Hegg v. Hawkeye Tri-County REC*, 512 N.W.2d 558 (Iowa 1994); *Wilson v. McLeod Oil Co.*, 327 N.C. 491, 398 S.E.2d 586 (1990); *Bradley v. American Smelting*, 104 Wash. 2d 677, 709 P.2d 782 (1985); *Davis v. Laclede Gas Co.*, 603 S.W.2d 554 (Mo. 1980) (en banc); *Davis v. Bostick*, 282 Or. 667, 580 P.2d 544 (1978).

terminated, a right of action exists for the damages suffered within the statutory period immediately preceding suit.[19]

We endorsed the "modified" continuing tort doctrine, also described as the "rule of separate accrual,"[20] in *Wischmann v. Raikes*.[21] In that case, the plaintiffs sued their neighbor for money damages for property damage from flooding allegedly caused by construction on the neighbor's land. The plaintiffs, suing in 1954, sought damages going back to 1945. We concluded that the plaintiffs' action was barred by res judicata because, in a previous action, they had sought injunctive relief but not money damages. However, in dicta, we also addressed the defendant's statute of limitations defense. Citing § 25-207, we stated that

> [b]y the allegations of their amended and supplemental petition the appellees sought to recover monetary benefits from 1945 forward for damages, if any, which they had suffered. The trial court limited such right to June 10, 1950, or a 4-year period prior to the bringing of this action. "A temporary injury is defined . . . as 'An injury that may be abated or discontinued at any time, either by the act of the wrongdoer, or by the injured party.' "[22] That was the appellant's position with reference to what he had done. . . .
> ". . . [W]here damages result from a continuing nuisance . . : a recovery may be had for each injury as it occurs." However, recovery could only be had for a period of 4 years from the time each of such causes of action accrued.[23]

We reaffirm our statement in *Wischmann* and conclude that a claim for damages caused by a continuing tort can be maintained for injuries caused by conduct occurring within the statutory limitations period. Seen in this light, the "continuing

---

[19] *Laclede Gas Co., supra* note 18, 603 S.W.2d at 556.

[20] See James R. MacAyeal, *The Discovery Rule and the Continuing Violation Doctrine as Exceptions to the Statute of Limitations for Civil Environmental Penalty Claims*, 15 Va. Envtl. L.J. 589 at 620 (1996).

[21] *Wischmann v. Raikes*, 168 Neb. 728, 97 N.W.2d 551 (1959).

[22] *Applegate v. Platte Valley Public Power and Irrigation District*, 136 Neb. 280, 285 N.W. 585 (1939).

[23] *Wischmann, supra* note 21, 168 Neb. at 747, 97 N.W.2d at 563-64 (citation omitted) (emphasis supplied).

tort doctrine" is not a separate doctrine, or an exception to the statute of limitations, as much as it is a straightforward application of the statute of limitations: It simply allows claims to the extent that they accrue within the limitations period.[24] A "continuing tort" ought not to be a rationale by which the statute of limitations policy can be avoided.[25] But when there are continuing or repeated wrongs that are capable of being terminated, a claim accrues every day the wrong continues or each time it is repeated, the result being that the plaintiff is only barred from recovering those damages that were ascertainable prior to the statutory period preceding the lawsuit.[26]

Turning to the facts of this case, and mindful of our standard of review on summary judgment, we conclude that there is an issue of material fact with respect to whether Alston was injured by a continuing tort occurring within the statutory limitations period. For reasons we will explain below, the discovery rule does not affect this conclusion. Taken in the light most favorable to Alston, she alleged negligence on the part of Hormel's meeting the requirements of a continuing tort: a course of continuing wrongful conduct, capable of termination, causing continuing and repeated injury.[27] And Hormel acknowledges that for purposes of this appeal, we must assume that Hormel was negligent up to and including Alston's last day of employment in November 1999. Because Alston's complaint was filed on October 23, 2003, at least some of Hormel's alleged negligence could have occurred within the limitations period.

### DISCOVERY RULE DOES NOT PREVENT RECOVERY OF DAMAGES CAUSED BY CONDUCT WITHIN STATUTE OF LIMITATIONS

The issue Hormel presents to this court is how to apply the discovery rule to a continuing tort. We have concluded that

---

[24] See *Russo Farms, supra* note 18.

[25] See *Bostick, supra* note 18.

[26] See *Cook v. DeSoto Fuels, Inc.*, 169 S.W.3d 94 (Mo. App. 2005), citing *Laclede Gas Co., supra* note 18.

[27] Compare, e.g., *Ambling Management Co., supra* note 17; *Biglioli v. Durotest Corp.*, 44 N.J. Super. 93, 129 A.2d 727 (1957), *affirmed* 26 N.J. 33, 138 A.2d 529 (1958); *Tennessee Eastman Corp., supra* note 17.

Alston's claim is not time barred with respect to damages caused by conduct within the statutory limitations period. But that leaves open the question whether she can recover for that period despite the fact that she discovered or should have discovered her injury before then. For a continuing tort, the statute of limitations runs from the time of the last injury or the time that the tortfeasor's tortious conduct ceases.[28] But under the discovery rule, the statute of limitations runs from the time that the potential plaintiff discovers, or with reasonable diligence should have discovered, the injury.[29] Obviously, if a continuing tort is not discovered, the discovery rule may toll the statute of limitations with respect to the entire claim. But we must determine when a claim accrues for a continuing tort when it is "discovered," within the meaning of the discovery rule, *before* the tort-feasor terminates the alleged tort.

That depends, in part, on whether the discovery rule is a tolling doctrine or doctrine of accrual. Although we acknowledge that we have occasionally referred to discovery being the time when a claim "accrues,"[30] the discovery rule, as it exists in Nebraska, is better understood as a tolling doctrine. In explaining the discovery rule, we have stated that

> "'[t]he mischief which statutes of limitations are intended to remedy is the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert.'" . . . The statutes of limitations are "'enacted upon the presumption that one having a well-founded claim will not delay enforcing it beyond a reasonable time if he [or she] has the right to proceed. The basis of the presumption is gone whenever the ability to resort to the courts is taken away.'" . . . "'If an injured party is wholly unaware of the nature of his [or her] injury or the cause of it, it is difficult

---

[28] See *Copier Word Processing, supra* note 7.

[29] See *Shlien, supra* note 4.

[30] See, e.g., *Nichols v. Ach*, 233 Neb. 634, 639, 447 N.W.2d 220, 224 (1989), *disapproved on other grounds, Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992).

to see how he [or she] may be charged with lack of diligence or sleeping on his [or her] rights.' "[31]

The rationale behind the discovery rule is that in certain categories of cases, the injury is not obvious and the individual is wholly unaware that he or she has suffered an injury or damage. In such cases, it is manifestly unjust for the statute of limitations to begin to run before a claimant could reasonably become aware of the injury.[32]

Thus, we have stated that when the discovery rule is applicable, the statute of limitations does not begin to run until the potential plaintiff discovers, or with reasonable diligence should have discovered, the injury. In those cases in which the discovery rule applies, the beneficence of the discovery rule is not bestowed on a potential plaintiff where the potential plaintiff in fact discovers, or in the exercise of reasonable diligence should have discovered, the injury within the initial period of limitations running from the wrongful act or omission. However, in a case where the injury is not obvious and is neither discovered nor discoverable within the limitations period running from the wrongful act or omission, the statute of limitations does not begin to run until the potential plaintiff discovers, or with reasonable diligence should have discovered, the injury.[33]

But the discovery rule does not alter the underlying principle that a claim accrues when the aggrieved party has the right to institute and maintain suit.[34] "Discovery," in the context of statutes of limitations, does not refer to the legal right to seek redress, but to the fact that one knows of the existence of an injury.[35] Thus, as we explained in the context of the statutory discovery provision for professional negligence claims, § 25-222,

---

[31] *Shlien, supra* note 4, 263 Neb. at 472, 640 N.W.2d at 650 (citations omitted).

[32] *Shlien, supra* note 4.

[33] *Id.*

[34] See *Pennfield Oil Co. v. Winstrom*, 272 Neb. 219, 720 N.W.2d 886 (2006).

[35] See *Gordon v. Connell*, 249 Neb. 769, 545 N.W.2d 722 (1996).

[o]ne of the obvious purposes of § 25-222 was to prevent the unjust result of having a cause of action in tort accrue and become barred by the applicable statute of limitations before the injured party knew or could reasonably have discovered the existence of the cause of action.

Importantly, § 25-222 does not alter our long-held approach to when a cause of action accrues. We continue to abide by the occurrence rule in actions arising in tort and in malpractice actions based upon fraudulent misrepresentation. Under that rule, a statute of limitations begins to run as soon as the cause of action accrues, and an action in tort accrues as soon as the act or omission occurs.[36]

Instead, the 1-year discovery exception of § 25-222 is a tolling provision. It tolls the statute of limitations, thereby permitting an injured party to bring an action beyond the time limitation for bringing the action in those cases in which the injured party did not discover and could not reasonably have discovered the existence of the cause of action within the applicable statute of limitations.[37]

The same reasoning is applicable to the common-law discovery rule we have applied in cases where an injury is not obvious and an individual is wholly unaware that he or she has suffered an injury.[38] This is significant because while a tolling doctrine can keep a statute of limitations *from running*, it should not cause a statute of limitations *to run* when it otherwise would not.

Nonetheless, there is conflicting authority in other jurisdictions on the interaction between the continuing tort doctrine and the discovery rule. Several courts, particularly in cases involving the Federal Employers' Liability Act (FELA),[39] have held that the continuing tort doctrine is inapplicable when an injury

---

[36] *St. Paul Fire & Marine Ins. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993). See, also, *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984).

[37] *Berntsen v. Coopers & Lybrand*, 249 Neb. 904, 911-12, 546 N.W.2d 310, 314-15 (1996).

[38] See *Shlien, supra* note 4.

[39] See 45 U.S.C. § 51 et seq. (2000).

is discovered or discoverable before the termination of the tort.[40] Other courts, however, have concluded that regardless of when an initial injury is discovered, the statute of limitations runs with respect to claims for successive injuries at the time they accrue.[41]

We find the latter view to be more persuasive and more consistent with Nebraska law. Much of the authority for applying the discovery rule to bar recovery for after-incurred injuries arises in the context of FELA litigation, which is distinguishable because under federal law, in FELA cases, the discovery rule is not a tolling doctrine, but a doctrine of accrual.[42] Under Nebraska law, however, the discovery rule simply provides an exception to a statute of limitations for a claim that would otherwise be outside the statutory period. There is no basis for applying that rule to preclude claims that are *within* the statutory limitations period. As the D.C. Circuit has reasoned, "[j]ust as res judicata cannot bar a claim predicated on events that have not yet transpired," knowledge acquired that one has a claim cannot trigger time limitations on allegedly tortious conduct that has not yet occurred.[43]

Furthermore, to apply the discovery rule under such circumstances would be to issue a tort-feasor an "open-ended license" to continue engaging in tortious conduct.[44] If we were to apply the

---

[40] See, e.g., *Mix v. Delaware and Hudson Ry. Co.*, 345 F.3d 82 (2d Cir. 2003); *Matson v. Burlington Northern Santa Fe R.R.*, 240 F.3d 1233 (10th Cir. 2001); *Mounts v. Grand Trunk Western R.R.*, 198 F.3d 578 (6th Cir. 2000); *Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998); *White, supra* note 16; *Waters v. Rosenbloom*, 268 Ga. 482, 490 S.E.2d 73 (1997); *Lecy v. Burlington Northern and Santa Fe*, 663 N.W.2d 589 (Minn. App. 2003); *Hill v. Transportation*, 76 Wash. App. 631, 887 P.2d 476 (1995); *Parks v. Madison County*, 783 N.E.2d 711 (Ind. App. 2002); *Asher v Exxon Co*, 200 Mich. App. 635, 504 N.W.2d 728 (1993).

[41] See, e.g., *Bankers Trust Co., supra* note 18; *Kichline, supra* note 18; *Page, supra* note 17; *Meadows, supra* note 17; *Beard, supra* note 7; *Hegg, supra* note 18; *Wilson, supra* note 18.

[42] See *Urie v. Thompson*, 337 U.S. 163, 69 S. Ct. 1018, 93 L. Ed. 1282 (1949). See, also, e.g., *Monaghan v. Union Pacific RR. Co.*, 242 Neb. 720, 496 N.W.2d 895 (1993).

[43] See *Page, supra* note 17, 729 F.2d at 821.

[44] See *id.* at 823.

discovery rule as Hormel suggests, once the statute of limitations elapsed after the discovery of a potential claim, the tort-feasor would be free to continue behaving tortiously, without consequence. It is one thing to enforce a statute of limitations against an otherwise valid claim, but it would be quite another to allow a tort-feasor to continue injuring a plaintiff without compensation.[45] Nor is there any basis in § 25-207 for doing so.

We also note that while the statute of limitations may not bar a continuing tort claim despite the plaintiff's discovery of the injury, a plaintiff is not free to delay suit with impunity. The plaintiff still risks losing damages as the limitations period runs as to various injuries, and a plaintiff's decision not to act on his or her knowledge may allow an alleged tort-feasor to raise other defenses, such as contributory negligence, assumption of the risk, laches, or the doctrine of avoidable consequences.[46]

■ We conclude, therefore, that in a continuing tort case, where the discovery rule is not applicable, § 25-207 applies according to its terms: A claim for damages from a continuing tort may be brought to the extent that the claim accrued within the statutory limitations period. In this case, it is not disputed that Alston was or should have been aware of her injury no later than March 1999, more than 4 years before she filed her complaint. Thus, the discovery rule is not applicable to this case and does not toll the statute of limitations with respect to damages caused outside the statute of limitations. But that does not affect our conclusion that there is an issue of material fact as to whether Hormel was liable to Alston for injuries caused by alleged continuing negligence within the limitations period, i.e., between October 23, 1999, and the last date of Alston's employment in November 1999.

## CONCLUSION

To the extent that Alston's claim is directed at damages accruing within the statutory limitations period, it is not time barred.

---

[45] See *id.* See, also, *Heard, supra* note 11; *Meadows, supra* note 17; *Curtis, supra* note 7.

[46] See, e.g., *Kichline, supra* note 18; *Meadows, supra* note 17; *Ambling Management Co., supra* note 17.

The district court erred in entering summary judgment and dismissing Alston's complaint. The judgment of the district court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.