Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/31/2018 09:09 AM CDT

Melinda J. Brown, appellant,
v. Regional West Medical
Center et al., appellees.
___ N.W.2d ___

Filed August 31, 2018.    No. S-17-555.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Limitations of Actions: Appeal and Error.** The point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the district court on the issue of the statute of limitations will not be set aside by an appellate court unless clearly wrong.

4. **Termination of Employment: Workers' Compensation.** To establish a prima facie case for retaliatory discharge for filing a workers' compensation claim, a plaintiff must establish the following elements: (1) The plaintiff filed a workers' compensation claim, (2) the plaintiff was terminated from employment, and (3) a causal link existed between the termination and the workers' compensation claim.

5. **Termination of Employment: Workers' Compensation: Evidence: Time.** A plaintiff supports an assertion of retaliatory motive by demonstrating proximity in time between the workers' compensation claim and the firing, along with evidence of satisfactory work performance and supervisory evaluations.

Appeal from the District Court for Scotts Bluff County: Leo P. Dobrovolny, Judge. Affirmed.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellant.

Howard P. Olsen, Jr., Steven W. Olsen, and John L. Selzer, of Simmons Olsen Law Firm, P.C., for appellee Regional West Medical Center.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Schreiner, District Judge.

Schreiner, District Judge.

## INTRODUCTION

Melinda J. Brown appeals from an order of the district court granting summary judgment in favor of Regional West Medical Center (RWMC) and dismissing her complaint for employment discrimination and retaliatory discharge. The district court found that Brown's discrimination claims were barred by the applicable statute of limitations. It dismissed her retaliation claim on the basis that there was no evidence to support a finding that her termination was retaliatory. For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

Brown was employed by RWMC as a customer service representative in the patient financial services department. On August 16, 2011, Brown fell in the parking lot of RWMC as she was leaving work, injuring her right hand and wrist. She reported for work the following day, but was instructed to seek medical care shortly after she arrived. Brown notified RWMC of the injury and made a workers' compensation claim. Despite being cleared to work with certain restrictions as of March 21, 2012, she has not returned to work since that day.

After providing Brown with 12 weeks of requested leave under the Family Medical Leave Act, RWMC sent a letter to Brown on December 13, 2011, advising her that she had been

approved for an additional 8 weeks of director-approved leave which would expire on January 7, 2012. The letter further advised Brown that she was "not guaranteed a return to any job" but was "encouraged to apply to any posted open position" with RWMC.

On December 16, 2011, Brown delivered a letter to RWMC asking for reasonable accommodations to allow her to continue her employment, either in her current department or in another department within RWMC. RWMC responded with a letter asking Brown to complete an employee accommodation request form in order to determine whether she was eligible for accommodation. Brown completed the form, writing that she had "limited use of [her] Right hand," and requested the following accommodation: "Want a job that I can come back to after I am cleared by my Doctor . . . ."

On January 19, 2012, RWMC sent a letter to Brown informing her that her period of director-approved leave had been exhausted as of January 8, 2012, and that she was being placed on furlough until August 15. It explained that although her position was not being held, she would remain on the employment rolls for purposes of receiving benefits while in furlough status. The letter further notified Brown that her employment would terminate on August 15 unless she applied for and secured another position with RWMC before that date. Brown testified that she did not look for or apply for any other positions with RWMC, as she felt she should not have to reapply.

On August 15, 2012, RWMC sent a termination letter to Brown, stating:

Following the use of all available leave time, you requested, and [RWMC] granted, your move to "Furlough" status. The maximum amount of leave and furlough time has now been depleted, and you have not returned to work with [RWMC] in another position. Therefore, consistent with our policies, we are now administratively ending your employment with [RWMC].

On December 20, 2012, Brown filed a charge of discrimination with the Nebraska Equal Opportunity Commission (NEOC) and the U.S. Equal Employment Opportunity Commission (EEOC), alleging violations of the Nebraska Fair Employment Practice Act (NFEPA) and the Americans with Disabilities Act (ADA). She alleged that she was denied reasonable accommodations and that her employment was ultimately terminated by RWMC due to her disability. On March 12, 2013, the NEOC issued a "right to sue" notice on Brown's discrimination charge.

Brown filed a complaint in the district court for Scotts Bluff County, alleging violations of the ADA and NFEPA for wrongful termination and failure to accommodate her disability. She further alleged that RWMC retaliated against her for filing a workers' compensation claim. RWMC denied the majority of Brown's allegations and asserted the statute of limitations as an affirmative defense.

RWMC moved for summary judgment on the basis that (1) Brown's claims under the ADA and NFEPA were barred by the statute of limitations, (2) Brown cannot establish a prima facie case for retaliation because RWMC had legitimate non-retaliatory reasons for terminating Brown's employment, and (3) Brown's claims for punitive damages are barred by the Nebraska Constitution, and any punitive damages under the ADA are barred by the statute of limitations.

At the summary judgment hearing, RWMC submitted depositions of several human resources personnel, who testified regarding the leave structure at RWMC. They testified that after an employee used his or her 12 weeks of legally mandated leave under the Family Medical Leave Act, RWMC's policies provided for an additional 8 weeks of "general" or "director approved" leave. After an employee had exhausted 12 weeks of leave under the Family Medical Leave Act and 8 weeks of director-approved leave, RWMC policies provided for the employee to be placed on furlough for a period ending 1 year from the date of the employee's first absence. An

employee on furlough does not have a position with RWMC, but is kept on the employment rolls for purposes of benefit eligibility and is required to apply for an open position in order to return to work for RWMC. If an employee on furlough does not apply for and obtain another position, his or her employment will be administratively terminated at the end of the furlough period.

RWMC also submitted its written leave policy into evidence. It states, in part:

The combination of the different leaves available shall not exceed 20 calendar weeks in a rolling 12-month period.

The hospital is not required to, and generally will not, reserve an employee's position beyond a total of 20 weeks leave time in a rolling 12-month period. In the case of an extended medical leave of absence, however, even though the employee's position is no longer reserved, the hospital will wait the balance of one full year before officially removing the employee's name from the employment rolls. During this time, the status of the employee will be designated as "on furlough" and the employee, if eligible under the insurance contract, may continue payment of their insurance premiums as if they were still in their initial 20 weeks of leave of absence. If an employee has not returned to active duty in a regular employment position prior to the expiration of the furlough date, their employment will be terminated.

If, during the course of a leave of absence, an employee is engaged in light duty work, the period(s) of time engaged in light duty shall not affect or in anyway [sic] extend the above stated one full year clause. Light duty assignments shall not collectively exceed six (6) months.

If, an employee has the appropriate clearance to return to work and the return to work date is after 20 weeks of leave of absence but before the end of one full year, that employee will be considered for any job openings for

which they qualify. If no job match can be made within
the one year period, termination will result. The former
employee may then continue to apply for positions as an
outside applicant.

RWMC also submitted evidence showing that it had placed
other employees on furlough and terminated their employment
in accordance with the leave policies described above.

Brown acknowledged that she did not apply for any other
positions with RWMC, but testified that she made numerous
contacts with human resources, her department supervisor,
and workers' compensation personnel, asking to be returned to
work. She testified that she never heard back from anyone at
RWMC about her accommodation requests.

The district court granted summary judgment in favor
of RWMC and dismissed Brown's complaint. It found that
Brown's ADA and NFEPA claims were barred by the appli-
cable 300-day statute of limitations. It found that the alleged
discriminatory action took place on January 19, 2012, when
RWMC informed Brown that her employment would termi-
nate on August 15 unless she applied for and secured another
position with RWMC. The time for filing claims under the
ADA and NFEPA expired 300 days later, on November 16, but
Brown did not file such claims until December 20. The district
court found there was no evidence of a subsequent employ-
ment practice by RWMC that would restart the limitations
period. Regarding Brown's common-law retaliation claim, the
district court found there was no evidence of a causal link
between Brown's termination of employment and her filing of
a workers' compensation claim. Rather, the evidence showed
that the termination resulted from RWMC's following its stan-
dard policies and procedures for employment termination.
Brown appeals.

## ASSIGNMENTS OF ERROR

Brown assigns six errors on appeal, but her arguments can
be consolidated into three areas. She argues the district court

erred in (1) finding that her ADA and NFEPA claims were barred by the applicable statute of limitations; (2) finding that there was no retaliation, in that there was no causal link between Brown's termination of employment and the filing of her workers' compensation claim; and (3) denying her claim for punitive damages.

## STANDARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.[2]

[3] The point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the district court on the issue of the statute of limitations will not be set aside by an appellate court unless clearly wrong.[3]

## ANALYSIS

### Statute of Limitations

Under both the ADA and the NFEPA, a claim must be filed with the EEOC and the NEOC within 300 days after the occurrence of the alleged unlawful employment practice.[4] The

---

[1] *Knapp v. Ruser*, 297 Neb. 639, 901 N.W.2d 31 (2017).

[2] *Id.*

[3] *Strode v. City of Ashland*, 295 Neb. 44, 886 N.W.2d 293 (2016).

[4] 42 U.S.C. §§ 12117(a) and 2000e-5(e)(1) (2012); Neb. Rev. Stat. § 48-1118(2) (Reissue 2010).

issue presented in this case is when that limitations period began to run. RWMC argues that the statute of limitations began to run on January 19, 2012, when it notified Brown that she had been placed on furlough and that her employment would terminate on August 15 if she did not obtain another position with RWMC before that date. Brown argues that the limitations period did not begin to run until the actual date of termination, which was August 15.

The U.S. Supreme Court addressed a similar issue in *Delaware State College v. Ricks*,[5] in which the plaintiff, who was a professor at the college, was informed that the college had voted to deny him tenure, but was given a 1-year terminal contract after which his employment would terminate. The plaintiff argued that the statute of limitations for his EEOC claim began to run only after his 1-year terminal contract expired. The U.S. Supreme Court disagreed and held that the limitations period begins to run at the time the employment decision is made and communicated to the employee, even though the effects of the employment decision may not occur until a later date.[6]

Here, we find that the limitations period began to run when Brown was notified of RWMC's decision on January 19, 2012, even though the consequences of that decision (i.e., her termination of employment) did not occur until August 15. Upon receiving the January 19 letter, Brown was on notice that her employment would terminate on August 15 unless she applied for and obtained another position with RWMC before that date. As in *Ricks*, it does not matter that the date of termination was delayed, given that the employment decision was made and communicated to Brown, and her termination of employment was an inevitable

---

[5] *Delaware State College v. Ricks*, 449 U.S. 250, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980).

[6] *Id.*

consequence of her being placed on furlough and not obtaining another position within the specified time period. Although Brown argues that there is no evidence in the record as to when Brown received the January 19 letter, we note that her NEOC complaint acknowledges receipt of such letter in January 2012.

We are also not persuaded by Brown's argument that there were numerous acts of continuing violations that occurred within the limitations period, such as RWMC's continued failure to make reasonable accommodations. Rather, we conclude that the continuing violations doctrine does not apply here because Brown's allegations are for wrongful termination and failure to accommodate, both of which are allegations of discrete discriminatory acts that are individually actionable.[7] Because the alleged discriminatory acts are discrete, they must have occurred within the limitations period in order to be actionable. Additionally, we agree with RWMC's argument that its first alleged failure to make reasonable accommodations occurred in December 2011 (outside the limitations period), and Brown cannot restart the limitations period by renewing a previously denied request for accommodation. If an employee could render a claim timely by simply renewing a previously denied request, the limitations period would be rendered meaningless.[8]

---

[7] See, *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); *Dick v. Dickinson State University*, 826 F.3d 1054, 1059 (8th Cir. 2016) ("'denial of a request for a reasonable accommodation' . . . 'is a *discrete act* of discrimination that is an *independently actionable* unlawful employment practice under the ADA'"); *Taxi Connection v. Dakota, MN & Eastern R.R. Corp.*, 513 F.3d 823, 825 (8th Cir. 2008) ("[t]he continuing violation doctrine does not encompass discrete discriminatory acts, such as termination, failure to promote, denial of transfer, or refusal to hire, which are individually actionable").

[8] *Mercer v. Southeastern Pennsylvania Transit Auth.*, 26 F. Supp. 3d 432 (E.D. Pa. 2014).

We conclude that the statute of limitations began to run when Brown was notified of RWMC's decision on January 19, 2012, and expired 300 days later on November 16. Brown did not file her claims with the EEOC and NEOC until December 20. Thus, the district court did not err in finding that Brown's ADA and NFEPA claims were barred by the applicable statute of limitations.

### Retaliation

[4,5] Brown argues that the district court erred in dismissing her common-law retaliation claim. To establish a prima facie case for retaliatory discharge for filing a workers' compensation claim, a plaintiff must establish the following elements: (1) The plaintiff filed a workers' compensation claim, (2) the plaintiff was terminated from employment, and (3) a causal link existed between the termination and the workers' compensation claim.[9] A plaintiff supports an assertion of retaliatory motive by demonstrating proximity in time between the workers' compensation claim and the firing, along with evidence of satisfactory work performance and supervisory evaluations.[10]

We agree with the district court that Brown could not establish that a causal link existed between her termination of employment and the filing of her workers' compensation claim. There was no real temporal proximity, as Brown filed her workers' compensation claim on or about August 17, 2011, and RWMC did not place her on furlough until approximately 20 weeks later. She was then administratively discharged 1 year after her first absence. The evidence showed that RWMC's decisions were based on the expiration of Brown's leave balances, in accordance with its policies and procedures, and consistent with how it treated other similarly situated employees. In other words, there was no evidence of retaliation against

---

[9] See *Riesen v. Irwin Indus. Tool Co.*, 272 Neb. 41, 717 N.W.2d 907 (2006).

[10] *Id.*

Brown for filing a workers' compensation claim. The district court did not err in dismissing this claim.

### PUNITIVE DAMAGES

Finally, Brown assigns the district court erred in denying her claim for punitive damages. Given our conclusions above that the district court did not err in dismissing her substantive claims, it follows that she was not entitled to punitive damages.

### CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED.