Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/25/2025 09:08 AM CDT

GEORGE MERITHEW, APPELLANT, V.
CITY OF OMAHA, APPELLEE.
___ N.W.3d ___

Filed July 25, 2025.    No. S-24-455.

1. **Summary Judgment: Appeal and Error.** An appellate court reviews
   the district court's grant of summary judgment de novo, viewing the
   record in the light most favorable to the nonmoving party and drawing
   all reasonable inferences in that party's favor.
2. **____: ____.** An appellate court will affirm a lower court's grant of sum-
   mary judgment if the pleadings and admitted evidence show that there is
   no genuine issue as to any material facts or as to the ultimate inferences
   that may be drawn from those facts and that the moving party is entitled
   to judgment as a matter of law.
3. **Limitations of Actions.** The point at which a statute of limitations
   begins to run must be determined from the facts of each case.
4. **Employer and Employee: Discrimination: Proof.** In cases involv-
   ing claims of employment discrimination, Nebraska courts recognize a
   burden-shifting analysis. First, the plaintiff has the burden of proving
   by the greater weight of the evidence a prima facie case of discrimina-
   tion. Second, if the plaintiff succeeds in proving the prima facie case,
   the burden shifts to the defendant to articulate some legitimate, non-
   discriminatory reason for the employee's rejection. Third, should the
   defendant carry the burden, the plaintiff must then have an opportunity
   to prove by the greater weight of the evidence that the legitimate reasons
   offered by the defendant were not its true reasons, but were a pretext for
   discrimination.
5. **Summary Judgment.** Summary judgment is proper only when the
   pleadings, depositions, admissions, stipulations, and affidavits in the
   record disclose that there is no genuine issue as to any material fact or
   as to the ultimate inferences that may be drawn from those facts and that
   the moving party is entitled to judgment as a matter of law.

6. **Fair Employment Practices: Proof.** In order to show retaliation under the Nebraska Fair Employment Practice Act, a plaintiff must establish (1) he or she engaged in protected conduct, (2) he or she was subjected to an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse action.

7. \_\_\_\_: \_\_\_\_. To satisfy the adverse employment action requirement in a retaliation claim, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse. This, in turn, requires a showing that the employment action might have dissuaded a reasonable worker from reporting the alleged unlawful practice. To meet this burden, a plaintiff must demonstrate that the employment action was material, not trivial, and that it resulted in some concrete injury or harm.

8. **Employer and Employee: Words and Phrases.** An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage.

9. \_\_\_\_: \_\_\_\_. Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects are adverse employment actions.

10. **Employer and Employee: Termination of Employment: Circumstantial Evidence.** Because an employer is not apt to announce retaliation as its motive, an employee's prima facie case in a retaliatory discharge action is ordinarily proved by circumstantial evidence.

11. **Termination of Employment: Time: Proof.** In a retaliatory discharge action, proximity in time between an employee's protected activity and discharge of the employee is a typical beginning point for proof of a causal connection.

12. **Employer and Employee: Discrimination: Proof.** In cases involving claims of employment discrimination, the employee may demonstrate pretext either by showing that the employer's explanation is unworthy of credence, because it has no basis in fact, or by persuading the court that a prohibited reason more likely motivated the employer.

Appeal from the District Court for Douglas County: James M. Masteller, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Jason M. Bruno, of Sherrets, Bruno & Vogt, L.L.C., for appellant.

Michelle Peters, Deputy Omaha City Attorney, and Stacey Hultquist for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Cassel, J.

# I. INTRODUCTION

After George Merithew retired from his employment with the city of Omaha Police Department (OPD), he sued the City of Omaha (the City) under the Nebraska Fair Employment Practice Act (NFEPA)[1] for retaliation.[2] The district court entered summary judgment in favor of the City, and Merithew appeals. We affirm the court's enforcement of a limitations statute. But because we agree that there are genuine issues of material fact that preclude summary judgment for unbarred acts, we otherwise reverse, and remand for further proceedings.

# II. BACKGROUND

## 1. Key Events and Retaliation Allegations

Pursuant to our standard of review, we summarize key events in the light most favorable to Merithew. We provide additional background for context, as necessary, with a focus on the issues raised on appeal. We set forth additional details in the analysis.

Merithew began his employment as a police officer with OPD in 1996. He was promoted to sergeant in 2003 and to lieutenant in 2009. Merithew is also a licensed attorney. Over the course of his career with OPD, his job duties included serving on a safety review board, teaching courses at the police officer training academy, and serving on the "Legislative Liaison Committee." He also assisted with writing OPD's policies and procedures manual.

In May 2018, Merithew emailed the City's human resources director and reported what he believed to be a violation of the "Palmer Consent Decree." Then, in July 2018, he informed the city council that Todd Schmaderer, the City's chief of

---

[1] See Neb. Rev. Stat. §§ 48-1101 to 48-1125 (Reissue 2021).

[2] See § 48-1114(1).

police, had retaliated against him for reporting the alleged violation, which triggered an investigation into Schmaderer's conduct.

Following Merithew's complaint to the city council, Schmaderer purportedly instructed officers that he wanted Merithew "written up for anything and everything" in order to prompt an investigation on "anything you can find," and told them to "get [Merithew] for anything you can." Meanwhile, Merithew received a performance appraisal from his direct supervisor, who rated him "above satisfactory" in all designated categories.

In September 2019, a fellow lieutenant reported an incident involving Merithew. The lieutenant alleged that while at a crowded airport, Merithew recounted a story about a female promotional candidate at another assessment center, and he made a comment that the candidate had, "'for lack of a better term,'" a "'real bull dyke persona.'" Merithew denied being a poor representative of OPD and denied making the comment. Because it was "[Merithew's] word against another lieutenant's word," OPD declined to take disciplinary action against Merithew at that time.

Later, another fellow officer reported an incident involving Merithew that led to an internal investigation. While representing OPD at a "Shop With A Cop" event, Merithew reportedly told a Latino child, "We already got rid of all the taco blankets." The fellow officer perceived this to be a "racially charged statement." Merithew admitted that he attended the event and handed out blankets to children, but he denied making that statement.

Following the investigation, on March 9, 2020, Merithew received a 20-day suspension.

On April 20, 2020, Merithew filed a charge of discrimination with the Nebraska Equal Opportunity Commission (NEOC) for alleged retaliation.

In May 2020, Schmaderer authorized a second internal investigation after Merithew reportedly "called a subordinate

a 'prick'" on March 29. Merithew did not recall saying that but indicated that if he did, it was "clearly in jest." During the investigation, the subordinate and another officer described a separate event, during which Merithew "made a statement that they perceived meant they were to treat people out west differently than they were to treat people in east precincts." Merithew asserted that the officers misunderstood his statement and disagreed that it had "racial undertones." Following the investigation, Schmaderer determined that Merithew's conduct had violated OPD's policies and procedures and other applicable rules.

On June 18, 2020, Schmaderer issued a letter recommending Merithew's employment be terminated. It outlined the complaints made by fellow officers to OPD, described the investigations in detail, and stated that effective that day (June 18), Merithew's status would be suspended with pay, pending the outcome of a pretermination hearing. In response to a question by counsel whether he terminated Merithew's employment instead of "demoting" or reassigning him, Schmaderer testified, "Yes, [Merithew] was terminated."

In July 2020, Merithew filed a second charge of discrimination with the NEOC. He asserted that on June 20—2 days after receiving the termination letter—he discovered that he was "locked out of [his] work email" and that "[his] office computer was being seized in order to perform a forensic analysis on it." From that point forward, he was "banned from [the City and OPD's] property" and unable to perform his job.

It is undisputed that Merithew retired from OPD in February 2021, under what the parties refer to as an "Early Delayed Retirement Option," which "allowed him to use his leave balances rather than be terminated."

## 2. Lawsuit

In July 2021, Merithew sued the City for damages under the NFEPA. As relevant here, his amended complaint alleged that he was "discharged" and subjected to "different terms

and conditions of employment" in retaliation for (1) reporting his employer's alleged violation of the Palmer Consent Decree in 2018, (2) reporting "retaliatory conduct" that he experienced shortly thereafter, and (3) filing the April 2020 charge of discrimination with the NEOC.

In its answer, the City denied Merithew's allegations. It asserted affirmative defenses, including that Merithew was an at-will employee, that he failed to state a prima facie case of retaliation, and that some allegations in the complaint were time barred.

### 3. Motion for Summary Judgment and Ruling

The City moved for summary judgment. Following a hearing, the district court entered a judgment, styled as an order, sustaining the motion and dismissing the action.

The court addressed two primary questions. First, it agreed with the City that any alleged discriminatory action that occurred before June 25, 2019, was untimely and therefore would not be considered. Second, the court determined that Merithew could not establish all of the prima facie elements of retaliation. It agreed with Merithew that he had engaged in protected conduct—both when he reported the alleged consent decree violation in 2018 and when he filed the April 2020 charge of discrimination. However, it rejected Merithew's argument that he was "constructively discharged." It also found that he failed to produce evidence establishing the causal connection element. Further, the court reasoned that even if Merithew could establish a prima facie case, the City presented legitimate, nondiscriminatory reasons for its actions. It said that Merithew's evidence was insufficient to show that the City's stated reasons were mere pretext for retaliation.

Merithew filed a timely appeal, which we moved to our docket.[3]

---

[3] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

## III. ASSIGNMENTS OF ERROR

Merithew assigns, reordered, that the district court erred in (1) not considering conduct prior to June 25, 2019; (2) determining as a matter of law there was no adverse employment action; (3) finding a lack of causation as a matter of law; and (4) finding no evidence of pretext as a matter of law.

Merithew also assigns, separately, that the court erred in granting the motion for summary judgment and dismissing the case. His argument centers on the court's finding that he failed to establish a prima facie case of retaliation. Because this assignment is subsumed in our analyses of the others, we need not consider it separately.

## IV. STANDARD OF REVIEW

[1,2] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[4] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[5]

## V. ANALYSIS

### 1. Continuing Violation Theory Argument Fails

[3] In his first assignment, Merithew contends that the district court erred in not considering conduct that occurred prior to June 25, 2019—the date marking 300 days before he filed his first charge with the NEOC. The date of filing and the mathematical computation are not disputed. The point at

---

[4] *Czech v. Allen*, 318 Neb. 904, 21 N.W.3d 1 (2025).

[5] *Id.*

which a statute of limitations begins to run must be deter-
mined from the facts of each case.[6]

A statute provides that "[a] written charge of violation of
the [NFEPA] shall be filed within three hundred days after the
occurrence of the alleged unlawful employment practice . .
. ."[7] Because there is no dispute as to the date of Merithew's
filing and the statute is clear, he attempts to avoid the statu-
tory bar.

Merithew urges us to apply the "continuing violation
theory,"[8] but we have previously rejected similar arguments.
Merithew relies upon a doctrine of accrual.[9] In the context
of tort claims, we have held that it is not an exception to the
statute of limitations: "It simply allows claims to the extent
that they accrue within the limitations period."[10] Particularly
relevant here, we have held that this doctrine did not apply to
an alleged violation of the NFEPA for wrongful termination.[11]
We explained that because the alleged discriminatory act was
discrete, it must have occurred within the limitations period in
order to be actionable.[12]

Merithew points to cases involving hostile work environ-
ment claims that have arrived at a different conclusion. But the
U.S. Supreme Court has soundly rejected applying this doc-
trine to discrete acts claims. "Hostile environment claims are
different in kind from discrete acts. Their very nature involves
repeated conduct."[13] Because Merithew's allegations in this

---

[6] See *Brown v. Regional West Med. Ctr.*, 300 Neb. 937, 916 N.W.2d 590
(2018).

[7] § 48-1118(2).

[8] Brief for appellant at 24.

[9] See *Alston v. Hormel Foods Corp.*, 273 Neb. 422, 730 N.W.2d 376 (2007).

[10] *Id.*, 273 Neb. at 430, 730 N.W.2d at 383-84.

[11] See *Brown v. Regional West Med. Ctr., supra* note 6.

[12] *Id.*

[13] *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 115,
122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).

case concern discrete acts, the hostile work environment cases do not control.

We adhere to our prior reasoning and enforce the June 25, 2019, cutoff. This precludes Merithew's complaint regarding numerous acts prior to that date. Because there was no factual dispute and because Merithew's attempt to circumvent the statutory bar lacked merit, the question became a matter of law. The district court correctly determined that all prior discrete discriminatory acts were untimely filed and no longer actionable.

## 2. NFEPA Burden-Shifting Analysis

Merithew's remaining assignments challenge the court's determinations under the framework for analyzing the NFEPA claims. Here, the standard of review for summary judgment drives the outcome.

[4] In cases involving claims of employment discrimination, Nebraska courts recognize a burden-shifting analysis that originated in *McDonnell Douglas Corp. v. Green*.[14] First, the plaintiff has the burden of proving by the greater weight of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry the burden, the plaintiff must then have an opportunity to prove by the greater weight of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.[15]

[5] For reasons we will explain, we conclude that the court erred in sustaining the City's motion for summary judgment regarding events not barred by the statute of limitations.

---

[14] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

[15] See *Galloway v. Husker Auto Group*, 318 Neb. 178, 14 N.W.3d 218 (2024).

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[16]

### (a) Factual Dispute Exists Regarding Merithew's Prima Facie Case

[6] The first step is determining whether the evidence was sufficient to establish a prima facie case. In order to show retaliation under the NFEPA, a plaintiff must establish (1) he or she engaged in protected conduct, (2) he or she was subjected to an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse action.[17]

The district court found that Merithew's evidence showed two "protected activities"—reporting the alleged consent decree violation in 2018 and filing the April 2020 discrimination charge. Neither party assigns error to that determination. The primary dispute is whether Merithew was subjected to an adverse employment action and, if so, whether such action was causally connected to his protected conduct.

[7] To satisfy the adverse employment action requirement in a retaliation claim, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse. This, in turn, requires a showing that the employment action might have dissuaded a reasonable worker from reporting the alleged unlawful practice. To meet this burden, a plaintiff must demonstrate that the employment action was material, not trivial, and that it resulted in some concrete injury or harm.[18]

---

[16] *Scott v. Lancaster Cty. Sch. Dist. 0001*, 318 Neb. 670, 18 N.W.3d 417 (2025).

[17] *Galloway v. Husker Auto Group, supra* note 15.

[18] *Knapp v. Ruser*, 297 Neb. 639, 901 N.W.2d 31 (2017).

Merithew maintains that he presented evidence showing that he was subjected to adverse employment action on several occasions. He highlights that he was removed from various roles, which, according to the record, occurred in 2018. Then, in September 2019, he was "written up."[19] Beginning on March 9, 2020, he was suspended for 20 days without pay. Finally, in June 2020, he was "effectively terminated."[20]

We disagree that each instance constituted an adverse employment action for purposes of our analysis. First, the alleged actions in 2018 cannot form the basis of Merithew's claim. We have already determined that any actions by the City prior to June 25, 2019, were not timely challenged and thus are not actionable. Further, because the writeup and suspension arguments were not raised below, we do not consider them.[21] We limit our analysis to Merithew's contention that he was effectively terminated.

[8,9] An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage.[22] Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects are adverse employment actions.[23]

The record shows that a genuine issue of material fact exists. Although the City argued that because Merithew retired, he could not meet this element, Schmaderer's testimony was that "[Merithew] was terminated." Merithew presented evidence that he was suspended after receiving the termination letter, his work computer was confiscated, and he was no longer

---

[19] Brief for appellant at 15.

[20] *Id.* at 16.

[21] See *Saylor v. State*, 315 Neb. 285, 995 N.W.2d 192 (2023) (appellate court will not consider argument or theory raised for first time on appeal).

[22] *Fraternal Order of Police v. County of Douglas*, 270 Neb. 118, 699 N.W.2d 820 (2005), *modified on denial of rehearing* 270 Neb. 469, 745 N.W.2d 883.

[23] *Id.*

permitted on his employer's premises. Viewing the record in the light most favorable to Merithew and drawing all reasonable inferences in his favor, a reasonable employee could find that the City's action was materially adverse and resulted in concrete injury or harm. When the evidence is viewed in that light, there was a tangible change that produced a material disadvantage.

[10,11] We further conclude that viewed through the summary judgment lens, the evidence was sufficient regarding a causal connection. Because an employer is not apt to announce retaliation as its motive, an employee's prima facie case in a retaliatory discharge action is ordinarily proved by circumstantial evidence.[24] Proximity in time between an employee's protected activity and discharge of the employee is a typical beginning point for proof of a causal connection.[25]

Merithew presented evidence supporting his belief that OPD had a retaliatory motive. There was evidence that Schmaderer instructed others to affirmatively look for reasons to report Merithew, and reports followed shortly thereafter. We find it significant that Merithew had been an employee of OPD for nearly 25 years, yet just 2 months elapsed between the first discrimination charge and the termination letter. This time period might not be significant in other cases. But here, in light of Schmaderer's alleged directive and Merithew's extensive employment history with OPD, including the satisfactory performance appraisal completed by Merithew's direct supervisor around the same time, a reasonable inference of causation may be drawn in his favor. Here again, the summary judgment standard, which is highly deferential to the nonmoving party, precluded a legal conclusion that Merithew failed to establish a prima facie case.

---

[24] *O'Brien v. Bellevue Public Schools*, 289 Neb. 637, 856 N.W.2d 731 (2014).

[25] *Id*.

### (b) City's Justification

The next step of the framework concerns the City's justification. Merithew does not challenge the court's determination that the City met its burden to produce evidence of a legitimate, nondiscriminatory reason for its actions. On remand, the City will be deemed to have met this burden of production.

### (c) Factual Dispute Exists Regarding
### Allegations of Pretext

Turning to the final step of the framework, Merithew argues that the district court erred in finding there was no evidence of pretext as a matter of law. He generally contends that there was conflicting testimony and evidence that established a genuine issue of material fact as to whether the City's reasons were mere pretext for retaliation. The City maintains that Merithew cannot show a retaliatory motive by Schmaderer, when there was a "plethora of evidence" supporting his recommendation of termination.[26]

[12] The parties agree that in cases involving claims of employment discrimination, "[t]he employee may demonstrate pretext either by showing that the employer's explanation is unworthy of credence, because it has no basis in fact, or by persuading the court that a prohibited reason more likely motivated the employer."[27]

Here again, our standard of review controls. We cannot say that the City is entitled, as a matter of law, to judgment on this step of the framework.

Having determined that there are genuine issues as to material facts and as to the inferences that may be drawn from those facts, we conclude that Merithew presented sufficient evidence, at this stage, to preclude judgment as a matter of law on Merithew's burdens to establish a prima facie case and demonstrate that the City's justification was pretextual. We

---

[26] Brief for appellee at 30.

[27] *Hartley v. Metropolitan Util. Dist.*, 294 Neb. 870, 897, 885 N.W.2d 675, 696 (2016).

express no opinion regarding the ultimate merits of Merithew's retaliation claim.

## VI. CONCLUSION

We reject Merithew's continuing violation theory argument and conclude that the district court's decision regarding the statute of limitations was legally correct. We affirm that part of the judgment. However, viewing the record in the light most favorable to Merithew and drawing all reasonable inferences in his favor, we conclude that there were genuine issues of material fact that precluded summary judgment regarding (1) whether Merithew was subjected to an adverse employment action, (2) whether such action was causally connected to his protected conduct, and (3) whether the City's stated reasons were mere pretext for retaliation. We reverse that part of the district court's judgment and remand the cause for further proceedings.

Affirmed in part, and in part reversed and remanded for further proceedings.