Gibbons Ranches, L.L.C., appellant, v.
Joel D. Bailey and Jaimee Bailey,
husband and wife, appellees.

Gibbons Ranches, L.L.C., appellant, v. Circle B
Farms, Inc., doing business as Circle B
Farms, a Nebraska corporation,
and Tom Bailey, appellees.

___ N.W.2d ___

Filed January 23, 2015.   Nos. S-14-109, S-14-110.

1.  **Leases: Judgments: Appeal and Error.** The interpretation of a lease is a question of law that an appellate court decides independently of the district court.
2.  **Motions for New Trial: Appeal and Error.** An appellate court reviews a denial of a motion for new trial for an abuse of discretion.
3.  **Contracts: Parties: Intent.** To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract.
4.  ____: ____: ____. A contract is not formed if the parties contemplate that something remains to be done to establish contractual arrangements or if elements are left for future arrangement.
5.  **Contracts: Parties.** When an agreement stipulates that certain terms shall be settled later by the parties, such terms do not become binding unless and until they are settled by later agreement.
6.  ____: ____. A fundamental and indispensable basis of any enforceable agreement is that there be a meeting of the minds of the parties as to the essential terms and conditions of the proposed contract.
7.  **Statute of Frauds: Contracts: Evidence.** The written evidence required by the statute of frauds must contain the essential terms of the contract.
8.  **Leases.** When an express lease agreement contemplates the payment of rent in money, the amount of rent is an essential term of the agreement.
9.  ____. Because rent is an essential term in a lease agreement, an agreement to agree on it in the future is not enforceable.
10. **Contracts.** In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.
11. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.
12. **Contracts.** When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.
13. ____. The fact that the parties have suggested opposing meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.
14. ____. A contract is viewed as a whole in order to construe it.

15. **Parol Evidence: Contracts.** The general rule is that unless a contract is ambiguous, parol evidence cannot be used to vary its terms.
16. **Contracts: Intent.** An unambiguous contract is not subject to interpretation or construction, and in such a contract, the intention of the parties must be determined from its contents alone.

Appeals from the District Court for Custer County: Karin L. Noakes, Judge. Affirmed as modified.

Bradley D. Holbrook and Nicholas A. Buda, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellant.

Christopher P. Wickham, of Sennett, Duncan, Jenkins & Wickham, P.C., L.L.O., for appellees.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## I. INTRODUCTION

A landlord leased separate properties to different tenants using nearly identical written documents. The parties dispute whether the leases were enforceable for their stated 5-year terms or whether a clause providing for "annual review of rental rates" resulted in unenforceable "agreements to agree." In the landlord's appeals from declaratory judgments for the tenants, we conclude that the leases unambiguously contemplated only an annual "review" and did not require annual agreement. With a minor modification, we affirm the judgments.

## II. BACKGROUND

### 1. Parties

Gibbons Ranches, L.L.C., is a ranching entity in Custer County, Nebraska. For many years, it leased its farm ground to Joel D. Bailey and Jaimee Bailey, husband and wife, and to B Agri-Services, Inc., doing business as Circle B Farms (Circle B). We refer to the Baileys and Circle B collectively as "the tenants."

### 2. Leases

On March 7, 2011, Gibbons Ranches and Circle B entered into a 5-year lease agreement retroactive to March 1. Later in

March and April, Gibbons Ranches and the Baileys entered into 5-year lease agreements with the same beginning date as the Circle B lease.

For convenience, we quote from the Circle B lease. We have italicized the numbers which were different from those in the Bailey leases. Otherwise, the language in each lease was identical. With this understanding, the provisions concerning rent stated:

> 1. The term of this lease shall be five (5) years. An annual review of rental rates and terms will be completed in January of each year. The final year of this contract will be 2015. Less[o]r hereby leases to Lessee to occupy and use for agricultural purposes only during the crop year (year one) March 1, 2011 to March 1, 2012, the land of Less[o]r in Custer County, Nebraska, consisting of approximately *561* (190$) acres irrigated and *240* (80$) acres of dry land and grass as described on Exhibit "A" attached hereto (hereinafter referred to as the "Property"). Rental agreement also includes full use of the Quonset and grain bins located on said property.
>
> 2. Lessee agrees to pay Less[o]r as rent for said land the annual sum of *$125,790.00*, which shall be paid in two installments as follows: first half *$62,895.00*, due April 15 and second half, *$62,895.00*, due November 1st. The consideration for this lease is cash in the amount of *$125,790.00* regardless of the correct number of acres and the price assigned to each acre. Delinquent payment shall bear interest at the rate of 10% per annum until paid.

During the winter of 2011-12, Gibbons Ranches and Circle B's president reviewed and negotiated a modification of the rental rates for the 2012 crop year. The Baileys agreed to the same new rates and signed a new lease in April 2012 which reflected the new rental amount. A new lease with the modified rental rates for irrigated acres and for dryland acres was prepared for Circle B, but Circle B's president refused to sign it. Despite the absence of a revised lease for Circle B, all of the tenants paid rent in accordance with the new rates.

The parties did not reach an agreement on rental rates for the 2013 crop year. The tenants submitted checks based on the 2012 rental rates and proceeded to farm Gibbons Ranches' land.

### 3. Lawsuits

In June 2013, Gibbons Ranches sued the tenants in separate actions. In the complaints, Gibbons Ranches sought, among other things, a declaratory judgment to determine its rights under the leases, including the rental rates and terms for the 2013 crop year. Gibbons Ranches alleged that the tenants refused to negotiate in good faith the terms of the leases for the 2013 crop year and that the tenants farmed its ground for the 2013 crop year at rental rates that were less than what was fair and reasonable. The tenants alleged in their respective answers that Gibbons Ranches' rights, status, and legal relations were sufficiently stated in the leases.

### 4. District Court Judgment

After a consolidated trial, the district court entered a declaratory judgment in each case. The court found that the leases were valid and enforceable agreements through 2015. The court determined that the tenants were not under an obligation to agree to alter the terms, that the leases were unambiguous, and that the parol evidence rule applied to exclude extrinsic evidence from being considered to interpret the parties' respective rights and obligations under the leases.

Gibbons Ranches moved for a new trial in each case, and the district court overruled the motions. Gibbons Ranches timely appealed, and we moved the cases to our docket under our statutory authority to regulate the caseloads of the appellate courts of this state.[1] The cases were consolidated for briefing, argument, and disposition.

## III. ASSIGNMENTS OF ERROR

Gibbons Ranches assigns that the district court erred in (1) determining that the leases were valid and enforceable through 2015; (2) determining that the leases were unambiguous as

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

a matter of law; (3) determining that the parol evidence rule applied to exclude extrinsic evidence to interpret the parties' intent in entering into the leases, including the annual review provision; (4) failing to determine the parties' respective rights and duties under the leases, including the amount of fair and reasonable rent to be paid by the tenants to Gibbons Ranches for the 2013 crop year and who had the right to retain possession of the roughage; and (5) overruling Gibbons Ranches' motions for new trial.

## IV. STANDARD OF REVIEW

[1] The interpretation of a lease is a question of law that an appellate court decides independently of the district court.[2]

[2] An appellate court reviews a denial of a motion for new trial for an abuse of discretion.[3]

## V. ANALYSIS

### 1. Validity and Enforceability of Leases

The central issue on appeal is whether the leases were valid if the parties did not agree to a rental rate after the second year. The district court determined that the leases were valid and enforceable through 2015. But Gibbons Ranches asserts that the leases were not valid, because they did not include the amount of rent to be paid after the second year or a method by which to definitively calculate it.

### (a) General Principles of Law

[3-5] The law regarding contractual agreements, such as a lease, is well established. To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract.[4] A contract is not formed if the parties contemplate that something remains to be done to

---

[2] See *Beveridge v. Savage*, 285 Neb. 991, 830 N.W.2d 482 (2013).

[3] See *Hike v. State*, 288 Neb. 60, 846 N.W.2d 205 (2014).

[4] *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011).

establish contractual arrangements or if elements are left for future arrangement.[5] When an agreement stipulates that certain terms shall be settled later by the parties, such terms do not become binding unless and until they are settled by later agreement.[6]

### (b) Essential Terms

[6,7] A fundamental and indispensable basis of any enforceable agreement is that there be a meeting of the minds of the parties as to the essential terms and conditions of the proposed contract.[7] Under the statute of frauds, "[e]very contract for the leasing for a longer period than one year . . . shall be void unless the contract . . . be in writing and signed by the party by whom the lease . . . is to be made."[8] And the written evidence required by the statute of frauds must contain the essential terms of the contract.[9]

The case law in Nebraska is not clear regarding whether rent is an essential term in a lease agreement. The Nebraska Court of Appeals recently stated in an unpublished memorandum opinion that the monthly rent to be paid was an essential term of an alleged lease extension.[10] But the tenants point to *Folden v. State*,[11] where we long ago made a statement to the effect that rent is not essential to a valid lease of land. However, our statement must be put in context. The agreement in *Folden* provided in part that the lessor leased the premises "'in consideration of the covenants'" of the lessee.[12] We then

---

[5] *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001), *abrogated in part on other grounds, Sutton v. Killham*, 285 Neb. 1, 825 N.W.2d 188 (2013).

[6] *Id*.

[7] *Peters v. Halligan*, 182 Neb. 51, 152 N.W.2d 103 (1967).

[8] Neb. Rev. Stat. § 36-105 (Reissue 2008).

[9] See *K & K Farming v. Federal Intermediate Credit Bank*, 237 Neb. 846, 468 N.W.2d 99 (1991).

[10] *Zeeck v. Starman*, No. A-11-1056, 2012 WL 3870307 (Neb. App. Sept. 4, 2012) (selected for posting to court Web site).

[11] *Folden v. State*, 13 Neb. 328, 14 N.W. 412 (1882).

[12] *Id*. at 330, 14 N.W. at 413.

stated: "While it is true that the consideration mentioned does not fall within what is commonly understood by the term rent, that is not at all important. Rent, properly speaking, is not essential to a valid lease of land."[13] In that context, we interpret our statement to be that monetary rent is not necessary. Some 20 years later, citing *Folden*, we stated that "[r]ent is not essential to a valid lease of land."[14] But that case involved a situation in which the tenant remained in possession of the leased premises even though his term had expired, and we reasoned that even if no definite agreement as to the amount of rent had been reached, the law would imply a promise to pay a reasonable rent.

[8,9] To clarify the law in Nebraska, we now hold that when an express lease agreement contemplates the payment of rent in money, the amount of rent is an essential term of the agreement. This conclusion appears to be generally accepted elsewhere.[15] And because rent is an essential term, an agreement to agree on it in the future is not enforceable.[16]

### (c) Ambiguous Contracts

[10-13] In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.[17] A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.[18] When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.[19] The fact that the parties have

---

[13] *Id*.

[14] *Schickendantz v. Rincker*, 75 Neb. 312, 315, 106 N.W. 441, 442 (1905).

[15] See, 49 Am. Jur. 2d *Landlord and Tenant* § 22 (2006); 37 C.J.S. *Frauds, Statute of* § 135 (2008).

[16] See, e.g., *Gerhold Concrete Co. v. St. Paul Fire & Marine Ins.*, 269 Neb. 692, 695 N.W.2d 665 (2005).

[17] *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011).

[18] *Beveridge v. Savage, supra* note 2.

[19] *Coffey v. Planet Group*, 287 Neb. 834, 845 N.W.2d 255 (2014).

suggested opposing meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.[20]

### (d) Application

Gibbons Ranches argues that the district court erred in determining that the leases were unambiguous. According to Gibbons Ranches, the provision requiring the parties to conduct an annual review of the rental rates and terms in January of each year is ambiguous. We disagree.

The rental rates and terms of the leases were subject to an annual "review." A definition of "review" is "a looking over or examination with a view to amendment or improvement."[21] By definition, a "review" is an examination. The examination may lead to an agreement, but a requirement that the parties reach a new agreement is not part of the commonly accepted meaning of the term. We find no ambiguity in this regard.

Gibbons Ranches asserts that the annual review provision is ambiguous because it does not specify the consequence of the parties' failure to reach an agreement on the rental rates and terms. But because a new agreement is not a necessary result of the review, the rate currently in effect would continue in the absence of an agreement to modify it. The absence of a specific provision addressing the effect of a review without any change to the contract did not introduce ambiguity.

Gibbons Ranches also relies upon an opinion of this court finding ambiguity in the word "financing," which Gibbons Ranches argues is comparable to "review." In *Quinn v. Godfather's Investments*,[22] the lease authorized the tenant to terminate the contract if the tenant was unable to obtain "'financing'" for construction of contemplated improvements. Although this court affirmed the trial court's finding

---

[20] *Bedore v. Ranch Oil Co., supra* note 17.

[21] Webster's Third New International Dictionary of the English Language, Unabridged 1944 (1993).

[22] *Quinn v. Godfather's Investments*, 213 Neb. 665, 667, 330 N.W.2d 921, 923 (1983).

that "financing" was ambiguous, our decision ultimately turned upon the trial court's alternative finding that even if a valid contract existed, the tenant made a good faith effort to accomplish financing for construction of the improvements. Gibbons Ranches' reliance on the *Quinn* decision is misplaced.

The leases here bear similarities to the lease in *T.V. Transmission v. City of Lincoln*.[23] In that case, a contract for a term of 20 years set forth a rental rate of $3 per pole per year. The contract provided for adjustment of the rent:

> "The annual rental and/or expense deposit payable by [the lessee] under this agreement may be adjusted at any time after five (5) years from the date of this agreement upon the written request of any party hereto. In case of adjustment any new rental or expense deposit agreed upon shall continue in effect for five (5) years thereafter, at which time such rental and/or expense deposit shall again be subject to review and readjustment upon the written request of any party thereto."[24]

Over 10 years into the contract, the lessor notified the lessee that it wished to establish a new rental charge, but the parties were unable to agree on a new rate. This court observed that the contract did not specify what would happen if agreement could not be reached on a new rental rate. We stated that the modification provision was "nothing more than an agreement to agree in the future" and that "[i]n the absence of such a future agreement, the provision is of no effect and is therefore unenforceable."[25] We stated that if there was no future agreement, the contract would "continue for at least 20 years at the $3 rental specified upon execution."[26] We reasoned that "[a]ny other interpretation would completely ignore the clause providing for a minimum 20-year duration,

---

[23] *T.V. Transmission v. City of Lincoln*, 220 Neb. 887, 374 N.W.2d 49 (1985).

[24] *Id.* at 888-89, 374 N.W.2d at 52.

[25] *Id.* at 892, 374 N.W.2d at 53-54.

[26] *Id.* at 892, 374 N.W.2d at 54.

as well as the default provision which specifically enumerates when the contract can be terminated before the expiration of that period."[27]

Similarly, the lease agreements in the instant appeals were for 5-year terms and the specified rent was to apply to the entire lease term, unless the parties agreed to modify the rent. The leases set forth the rental rate for the first year, March 2011 to March 2012, and were clearly valid for that year. The leases were also valid and enforceable for the 2012 crop year, despite the change in rental rates, because the parties agreed to a new rental rate for that year. But because the parties' "review" did not result in an agreement on a new rate for 2013, the leases continued at the last agreed-upon rate.

[14] A reading of the contract as a whole supports our conclusion that the contract was for a 5-year term rather than an annual lease. A contract is viewed as a whole in order to construe it.[28] Although section 1 specified the initial rent for a particular crop year, that section explicitly stated that the term was for 5 years and that the final year of the contract would be 2015. Further, section 2 identified a set amount of "annual" rent to be paid in two installments on "April 15" and "November 1" without any reference to a particular year. We conclude that the rent specified in section 2 and all of the other terms in the leases were to apply to the entire 5-year term unless the parties agreed to alter the terms.

We agree with the district court that the leases were for terms of 5 years, but we make a slight modification to its judgments. The district court adjudged that the "Farm Lease Agreement is valid and enforceable through 2015." However, that statement did not take into account the possibility of changed circumstances after the date of judgment. For example, if the tenants later defaulted in the payment of rent, Gibbons Ranches would have grounds to terminate the leases. Because the record on appeal discloses the situation concerning enforcement of the leases from 2011 to 2013 only,

---

[27] *Id.*

[28] *Gridiron Mgmt. Group v. Travelers Indemnity Co.*, 286 Neb. 901, 839 N.W.2d 324 (2013).

our decision regarding the enforceability of the leases does not take into account any circumstances that may have changed and that are not contained in our record.

## 2. Parol Evidence

Gibbons Ranches also claims that the district court erred in determining that the parol evidence rule applied to exclude extrinsic evidence. It argues that the court should have considered trial testimony to ascertain the intent of the parties. We disagree.

[15,16] The general rule is that unless a contract is ambiguous, parol evidence cannot be used to vary its terms.[29] An unambiguous contract is not subject to interpretation or construction, and in such a contract, the intention of the parties must be determined from its contents alone.[30] Because the contract was not ambiguous, the district court did not err in disregarding the testimony at trial.

## 3. Motions for New Trial

Finally, Gibbons Ranches argues that the district court erred in overruling its motions for new trial. It asserts that the court's declaratory judgments were contrary to the law and evidence for the same reasons set forth in its previous arguments. Because we conclude that the district court did not err with respect to those issues, the court did not abuse its discretion in overruling the motions for new trial.

## VI. CONCLUSION

We hold that rent is an essential term in an express lease which contemplates the payment of monetary rent and that the leases in the case before us specified an amount of rent for the 5-year term of the leases—an amount that could be modified by further agreement of the parties. Because the terms of the leases were clear and unambiguous, the court properly excluded parol evidence regarding the intentions of the parties. We modify a sentence in each of the district court's

---

[29] See *Sack Bros. v. Tri-Valley Co-op*, 260 Neb. 312, 616 N.W.2d 786 (2000).

[30] See *T.V. Transmission v. City of Lincoln, supra* note 23.

declaratory judgments by adding a clause at the beginning of the sentence, such that the modified sentence states, "Except for a change in circumstances arising after the date of this judgment, this Farm Lease Agreement is valid and enforceable through 2015." As so modified, we affirm the judgments of the district court.

AFFIRMED AS MODIFIED.

————————

PAUL M. SCHWARZ, APPELLANT, V. KRISTI L. SCHWARZ, NOW KNOWN AS KRISTI L. HENDRICKSON, APPELLEE.

___ N.W.2d ___

Filed January 23, 2015.    No. S-14-122.

1. **Modification of Decree: Child Support.** Modification of child support is entrusted to the discretion of the trial court.
2. **Modification of Decree: Child Support: Appeal and Error.** An appellate court reviews proceedings for modification of child support de novo on the record and will affirm the judgment of the trial court absent an abuse of discretion.
3. **Judges: Words and Phrases.** A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
4. **Child Support: Rules of the Supreme Court.** Interpretation of the Nebraska Child Support Guidelines presents a question of law.
5. **Judgments: Appeal and Error.** An appellate court resolves questions of law independently of the lower court's conclusion.
6. **Courts: Child Support.** The trial court has discretion to choose whether and how to calculate a deduction for subsequent children.
7. **Child Support.** No precise mathematical formula exists for calculating child support when subsequent children are involved, but the court must perform the calculation in a manner that does not benefit one family at the expense of the other.
8. **Modification of Decree: Child Support: Proof.** The party requesting a deduction for his or her obligation to support subsequent children bears the burden of providing evidence of the obligation, including the income of the other parent of the child.
9. **Child Support: Appeal and Error.** A party may raise two separate issues on appeal when a trial court allows a deduction for the obligor's support of subsequent children: (1) whether the court abused its discretion by allowing a deduction and (2) whether the court's method of calculation was an abuse of discretion.