Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/26/2018 08:11 AM CDT

Dr. Robert F. Colwell, Jr., D.D.S., and Dr. Robert F.
Colwell, DDS, P.C., appellants, v. Sean Mullen, J.D.,
and Hancock & Dana, P.C., appellees.

___ N.W.2d ___

Filed October 26, 2018.    No. S-17-889.

1. **Limitations of Actions: Appeal and Error.** The point at which a statute
   of limitations begins to run must be determined from the facts of each
   case, and the decision of the district court on the issue of the statute of
   limitations normally will not be set aside by an appellate court unless
   clearly wrong.
2. **Summary Judgment.** Summary judgment is proper when the pleadings
   and evidence admitted at the hearing disclose no genuine issue regard-
   ing any material fact or the ultimate inferences that may be drawn from
   those facts and that the moving party is entitled to judgment as a matter
   of law.
3. **Summary Judgment: Appeal and Error.** In reviewing a summary judg-
   ment, an appellate court views the evidence in the light most favorable
   to the party against whom the judgment is granted and gives such party
   the benefit of all reasonable inferences deducible from the evidence.
4. **Limitations of Actions: Negligence.** The period of limitations begins to
   run upon the violation of a legal right, that is, when an aggrieved party
   has the right to institute and maintain suit. If a claim for professional
   negligence is not to be considered time barred, the plaintiff must either
   file within 2 years of the alleged act or omission or show that its action
   falls within an exception to Neb. Rev. Stat. § 25-222 (Reissue 2016).
5. **Limitations of Actions.** The 1-year discovery exception of Neb. Rev.
   Stat. § 25-222 (Reissue 2016) is a tolling provision, but it applies only
   in those cases in which the plaintiff did not discover and could not have
   reasonably discovered the existence of the cause of action within the
   applicable statute of limitations.
6. **Limitations of Actions: Malpractice.** In order for a continuous rela-
   tionship to toll the statute of limitations regarding a claim for malprac-
   tice, there must be a continuity of the relationship and services for the

same or related subject matter after the alleged professional negligence. Continuity does not mean the mere continuity of the general professional relationship.

7. ____: ____. Even where a continuous relationship exists, the continuous relationship rule is inapplicable when the claimant discovers the alleged negligence prior to the termination of the professional relationship.

8. **Limitations of Actions: Torts.** It is well accepted that when an individual is subject to a continuing, cumulative pattern of tortious conduct, capable of being terminated and involving continuing or repeated injury, the statute of limitations does not run until the date of the last injury or cessation of the wrongful action.

9. ____: ____. The continuing tort doctrine requires that a tortious act—not simply the continuing ill effects of prior tortious acts—fall within the limitation period.

10. **Appeal and Error.** Claims not presented to or decided by the district court need not be addressed on appeal.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed.

John A. Svoboda and Adam J. Wachal, of Gross & Welch, P.C., L.L.O., for appellants.

William F. Hargens and Lauren R. Goodman, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

Dr. Robert F. Colwell, Jr., D.D.S., and his self-named professional corporation (collectively Colwell), filed suit alleging malpractice against Sean Mullen and against Hancock & Dana, P.C. (collectively Mullen). Sean Mullen is an attorney licensed to practice law and works as a tax attorney at Hancock & Dana, an accounting firm. The district court granted Mullen's motion for summary judgment, concluding that Colwell's malpractice claims were barred by the statute of limitations set forth in Neb. Rev. Stat. § 25-222 (Reissue 2016). We affirm.

## FACTUAL BACKGROUND

Dr. Colwell was a dentist practicing primarily in Douglas County, Nebraska. In 2004, he agreed to purchase 50 percent of a dental practice currently being operated by Jeffrey Garvey. The purchase agreement envisioned that Dr. Colwell and Garvey would form separate professional corporations in their respective names and that those professional corporations would each own half of the practice. The practice would be operated as Midlands Oral Health, LLC (Midlands).

Colwell hired Mullen to assist him in forming his professional corporation. Mullen had apparently worked for Garvey in the past and was again retained by Garvey to form Garvey's professional corporation. In addition, Mullen was retained by Dr. Colwell's professional corporation, Garvey's professional corporation, and Midlands as an accountant and tax attorney.

Midlands was formed as a going concern complete with various assets, including dental and office equipment and employees. In 2005, Midlands transferred control of its employees to a new corporation, Grobell, P.C. Grobell was owned by Garvey; apparently, Mullen assisted Garvey in the creation of Grobell and the transfer of the employees. Employees from a different dental practice that had been purchased by Midlands in 2004 were also transferred to Grobell. All employees were then leased by Grobell to Midlands, apparently at an 18-percent leasing fee. Colwell claims that this was all done without his knowledge and that he was damaged because as a 50-percent owner of Midlands, he had to pay half of the lease fee. Colwell alleges that he learned of the transfer of employees in mid-March 2011 and of the leaseback fee in August 2011.

In addition, with Mullen's assistance, Garvey also formed Vanguard Dental Solutions, Inc. (Vanguard). Vanguard was a service which charged a membership fee to participate, with members receiving a discount on dental services from participating care providers. Midlands was a participating provider with Vanguard, and Vanguard members paid less for dental services at Midlands. Colwell denies that he was ever informed

of Garvey's interest in Vanguard or of Mullen's assistance in the formation of Vanguard. It is not clear from the record when Vanguard was created; Colwell apparently learned of its creation in August 2011.

In October 2010, Colwell formed RMR Enterprises, L.L.C. (RMR), for the purpose of constructing a new office building for Midlands. RMR expended over $100,000 to buy land and pay fees associated with the purchase. In February 2011, Mullen reviewed certain provisions of an operating agreement for RMR and billed Colwell for those services.

In April 2011, Colwell terminated his professional relationship with Mullen. He later engaged counsel to file suit against Garvey. Colwell and Garvey eventually settled in December 2011. This current action for professional malpractice was filed on March 4, 2013. As amended, Colwell's complaint alleged six acts of legal and accounting malpractice: that Mullen (1) failed to advise Colwell of Mullen's conflict of interest; (2) transferred Midlands employees to Grobell without Colwell's knowledge; (3) caused Colwell to pay 50 percent of an 18-percent administrative leaseback fee for the Grobell employees; (4) prepared and filed an erroneous Schedule K-1 (K-1) for 2010 (alleged as legal malpractice) and for 2011 (alleged as both legal and accounting malpractice), causing Colwell to pay income tax of $150,000 on income never realized; (5) allowed certain overpayments to Garvey; and (6) billed Colwell for work not performed.

Mullen filed several motions to dismiss and motions for summary judgment. One motion for summary judgment was partially granted on August 11, 2015. In that order, the district court granted summary judgment on Colwell's claims that Mullen failed to disclose his conflict of interest, that Mullen transferred employees of Midlands to Grobell without Colwell's knowledge, that Mullen prepared and filed an erroneous 2010 K-1, and that Mullen allowed certain overpayments to be made to Garvey. As to each, the district court concluded that the claims were barred by the statute of limitations as set forth in

§ 25-222. A later motion for summary judgment addressed the remaining claims, specifically the leaseback fee, the erroneous 2011 K-1, and the billing for work not performed. In an order dated September 16, 2015, the district court also found those claims to be barred by the applicable statute of limitations.

Colwell appeals.

## ASSIGNMENTS OF ERROR

Colwell assigns, restated and consolidated, that the district court erred in (1) granting Mullen's motion for summary judgment, (2) finding that his action was barred by § 25-222, (3) failing to find that Mullen's actions constituted a continuing tort, (4) failing to find that the continuous representation applied to toll § 25-222, and (5) failing to find that there were numerous separate acts of malpractice which were timely brought under § 25-222.

## STANDARD OF REVIEW

[1] The point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the district court on the issue of the statute of limitations normally will not be set aside by an appellate court unless clearly wrong.[1]

[2,3] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[3]

---

[1] *Behrens v. Blunk*, 284 Neb. 454, 822 N.W.2d 344 (2012).

[2] *Jordan v. LSF8 Master Participation Trust*, 300 Neb. 523, 915 N.W.2d 399 (2018).

[3] *Id.*

## ANALYSIS

On appeal, Colwell argues that a variety of Mullen's actions were malpractice and that the district court erred in dismissing the claims for being time-barred by the statute of limitations set forth in § 25-222. Colwell contends that the statute of limitations on these claims was tolled, either because the claims alleged continuing torts or because there was a continuous representation between him and Mullen. Colwell further asserts that additional acts of malpractice occurred within 2 years prior to the filing of the malpractice action. Because these matters were disposed of by summary judgment, we view the evidence in the light most favorable to Colwell.

*Statute of Limitations for*
*Professional Malpractice.*

Section 25-222 sets forth the statute of limitations applicable to actions for professional malpractice and provides:

> Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided,* if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; *and provided further*, that in no event may any action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action.

[4] The period of limitations begins to run upon the violation of a legal right, that is, when an aggrieved party has the right

to institute and maintain suit.[4] If a claim for professional negligence is not to be considered time barred, the plaintiff must either file within 2 years of the alleged act or omission or show that its action falls within an exception to § 25-222.[5]

*Discovery Exception.*

[5] This court has said that the 1-year discovery exception of § 25-222 is a tolling provision, but that it applies only in those cases in which the plaintiff did not discover and could not have reasonably discovered the existence of the cause of action within the applicable statute of limitations.[6] Under the discovery principle,

> "a cause of action accrues and the . . . discovery provision . . . begins to run, when there has been discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery. . . . It is not necessary that the plaintiff have knowledge of the exact nature or source of the problem, but only knowledge that the problem existed."[7]

*Continuous Relationship Exception.*

[6,7] This court has also, upon occasion, considered whether a continuous relationship might operate to toll the statute of limitations set forth in § 25-222. In order for such a relationship to toll the statute of limitations regarding a claim for malpractice, there must be a continuity of the relationship and services for the same or related subject matter after the alleged professional negligence.[8] Continuity does not mean the mere continuity of the general professional

---

[4] *Behrens v. Blunk, supra* note 1.

[5] *Id.*

[6] *Id.*

[7] *Id.* at 460, 822 N.W.2d at 349.

[8] *Behrens v. Blunk, supra.*

relationship.[9] But even where a continuous relationship exists, this rule is inapplicable when the claimant discovers the alleged negligence prior to the termination of the professional relationship.[10]

*Continuing Tort.*

[8,9] It is well accepted that when an individual is subject to a continuing, cumulative pattern of tortious conduct, capable of being terminated and involving continuing or repeated injury, the statute of limitations does not run until the date of the last injury or cessation of the wrongful action.[11] This "continuing tort doctrine" requires that a tortious act—not simply the continuing ill effects of prior tortious acts—fall within the limitation period.[12] Nor can the necessary tortious act merely be the failure to right a wrong committed outside the statute of limitations, because if it were, the statute of limitations would never run because a tort-feasor can undo all or part of the harm.[13] Rather, when a tort is continuing, although the initial tortious act may have occurred longer than the statutory period prior to the filing of an action, an action will not be barred if it can be based upon the continuance of that tort within that period.[14]

*Mullen's Actions Were*
*Not Continuing Torts.*

Colwell argues that some of the actions made by Mullen were continuing torts and that to the extent the actions continued within the 2 years prior to the filing of his complaint, his claims are not barred by the statute of limitations. On appeal, Colwell specifically references (1) the transfer of employees

---

[9] *Id.*

[10] See *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999).

[11] *Alston v. Hormel Foods Corp.*, 273 Neb. 422, 730 N.W.2d 376 (2007).

[12] *Id.*

[13] *Id.*

[14] *Id.*

from Midlands to Grobell, which required Midlands to pay an 18-percent leaseback fee; (2) the loss of income due to the formation of Vanguard; (3) damages from conflict of interest to dissolve Midlands without Colwell's knowledge, occurring on or after March 9, 2011, and including June 30; (4) damages incurred by RMR in expending funds in preparation for building a new building for Midlands; (5) damages incurred as a result of falsification of a 2010 Form 1065 tax return and the accompanying K-1, which Colwell alleges Mullen continued to prepare from and after March 2011; (6) losses incurred as a result of preparation of the falsified 2011 Form 1065 and K-1; and (7) damages sustained as a result of Mullen's providing personal accounting and legal services to Garvey, done to conceal Mullen's and Garvey's misconduct or to advocate for positions in conflict with Colwell's interests.

[10] As an initial matter, we observe that while Colwell pled facts regarding Vanguard, RMR, and the dissolution of Midlands, as set forth in claims (2) through (4) above, he did not specifically allege any cause of action with regard to any alleged malpractice on these issues. Nor were these claims presented to or decided by the district court. As such, we need not address them on appeal.[15]

Moreover, Colwell's complaint failed to allege that Mullen committed malpractice by working with Garvey to provide personal legal and accounting services to conceal their wrongdoing, as set forth in claim (7) above. As such, we also need not address those claims. Finally, the record establishes that the receiver for Midlands at the time of its dissolution, and not Mullen, filed the 2011 Form 1065 and associated K-1. As such, there is no merit to this claim, set forth as claim (6) above.

On these facts, the key time period this court is concerned with is between March 3, 2011, which was 2 years prior to the

---

[15] See *American Fam. Mut. Ins. Co. v. Hadley*, 264 Neb. 435, 648 N.W.2d 769 (2002).

filing of this action, and April 23, the day Colwell terminated his professional relationship with Mullen. Prior to that time, any claim would be barred by the statute of limitations; any subsequent action would not be malpractice for purposes of § 25-222 because Mullen was no longer authorized to provide professional services for Colwell.

With this background, we turn to Colwell's claim regarding Grobell, set forth above as claim (1). As the district court found, Mullen created Grobell on Garvey's behalf in 2001 and Midlands employees were transferred at about that same time. Colwell contends that he continues to be injured by this transfer because Grobell charged Midlands an 18-percent leaseback fee on those employees, of which he paid 9 percent as a part owner of Midlands.

The record shows that the transfer of employees from Midlands to Grobell occurred in 2005, with no indication from the record that Mullen did anything further with respect to Grobell after that point. Colwell merely alleges that he lost money in the form of the 18-percent leaseback fee. Such is an ill effect of an earlier act, and not in itself a tortious act that occurred within the statute of limitations.[16] There is no merit to this claim.

Colwell also alleges, set forth above as claim (5), that Mullen committed malpractice by filing a falsified 2010 Form 1065 and associated K-1 for Midlands. Assuming that Colwell can maintain this cause of action, we conclude that it is barred by the statute of limitations. While Colwell now argues that Mullen's billing records suggest that the 2010 forms were prepared in April 2011, in an interrogatory answered during discovery, Colwell indicated that he was aware in "January, 2011 [or p]ossibly early February, 2011" that the 2010 K-1 was erroneous. This is supported by Mullen's affidavit testimony that he filed the 2010 Form 1065 and K-1 "[i]n early 2011." We find no error in the district court's factual finding that the

---

[16] See *Alston v. Hormel Foods Corp., supra* note 11.

2010 K-1 was prepared in January 2011. This date is prior to the March 3 date relevant to this analysis and is outside the limitations period.

There is no merit to Colwell's assertion that the statute of limitations was tolled by the continuing tort doctrine.

*Continuous Representation Doctrine Is Inapplicable.*

Colwell also argues that the continuous representation doctrine applies to toll the statute of limitations as to Mullen's alleged malpractice claim in assisting Garvey in the formation and organization of Vanguard. As noted above, Vanguard was the discounted dental fee arrangement in which members paid a fee to belong to a corporation owned by Garvey, then paid a reduced rate for dental services to Midlands, of which Colwell was half owner. Colwell argues that he was damaged because he earned half of a reduced fee, while Garvey earned the other half, as well as income from his ownership interest in Vanguard.

We again observe that while Colwell set forth some facts as to Vanguard in his first amended complaint, he did not set forth a cause of action specific to Mullen's role in creating Vanguard. But in any case, we find the continuous representation doctrine inapplicable. The continuous representation doctrine requires "a continuity of the relationship and services for the same or related subject matter after the alleged professional negligence."[17] Continuity does not mean the mere continuity of the general professional relationship. Colwell claims that he was not aware of Vanguard's existence. Colwell and Mullen could not have had a continuous relationship over a matter Colwell did not know existed and in which Mullen most decidedly did not represent Colwell. Rather, any continuity would have to be based on only the general professional relationship; we have held that this is insufficient to support the application

---

[17] *Behrens v. Blunk, supra* note 1, 284 Neb. at 462, 822 N.W.2d at 350.

of this doctrine. Colwell's argument regarding the continuous representation doctrine's applicability to Vanguard is without merit.

*Remaining Allegations of Malpractice Either
Were Not Pled or Are Without Merit.*

Colwell also argues that several of his claims allege separate acts of malpractice that occurred in the 2 years preceding the filing of his complaint. Specifically, Colwell alleges that Mullen (1) had a conflict of interest when he advised Garvey to dissolve Midlands; (2) billed Midlands for matters notwithstanding the pendency of the receivership, in violation of an ongoing conflict of interest; (3) knew that Midlands would likely be dissolved yet allowed Colwell to expend funds in connection with RMR; (4) falsified the 2010 Form 1065 and associated K-1; (5) falsified the 2011 Form 1065 and associated K-1; (6) failed to return Colwell's file upon request; and (7) billed Midlands for personal work done for Garvey.

Most of these claims were not pled. Colwell did not plead that Mullen had a conflict of interest in advising Garvey to dissolve Midlands or that Mullen billed Midlands for work done during the pendency of the receivership. Nor did Colwell specifically plead any cause of action relating to RMR, the refusal to return his file, or any work on Garvey's behalf billed to Midlands. In addition, as is noted above, the 2011 Form 1065 and associated K-1 were not prepared by Mullen.

The only remaining claim regards the 2010 Form 1065 and associated K-1, which claim, as noted above, was barred by the statute of limitations. As such, there is no merit to any of Colwell's arguments on his separate claims of malpractice.

## CONCLUSION

The order of the district court granting Mullen's motion for summary judgment is affirmed.

AFFIRMED.

PAPIK, J., not participating.