IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

BECHER V. HUNT IRRIGATION

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MARK BECHER, APPELLANT,

V.

HUNT IRRIGATION, INC., A NEBRASKA CORPORATION, APPELLEE.

Filed June 18, 2019.    No. A-18-447.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Bradley A. Sipp for appellant.

Elizabeth J. Chrisp and, on brief, Ryan C. Carson, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

## INTRODUCTION

Mark Becher appeals from the order of the Lancaster County District Court which granted summary judgment in favor of Hunt Irrigation, Inc. Becher claims the district court erred in granting summary judgment because there were material issues of fact regarding whether or not Hunt Irrigation promised to winterize his lawn sprinkler system. We affirm.

## BACKGROUND

In July 2017, Becher filed a complaint against Hunt Irrigation claiming breach of contract and negligence. Becher alleged that he and Hunt Irrigation entered into an agreement in which the company "agreed to provide certain services in relation to the maintenance and care of [his] sprinkler system" at Becher's residence located on Surfside Drive in Lincoln, Nebraska. Becher claimed that in December 2013, his "sprinkler system froze causing [damages] in excess of

$200,000" to his home. Becher claimed the cause of damages to his residence was due to Hunt Irrigation's breach of contract and negligence.

Hunt Irrigation denied the material allegations of Becher's complaint and asserted several affirmative defenses, including that Becher's claims for damages were barred due to lack of consideration for any contract alleged. Hunt Irrigation filed a motion for summary judgment, contending that the "undisputed evidence in this matter shows that there was no duty, either contractual or otherwise, owed to [Becher] to winterize his property in the Fall of 2013 as [he] alleged" and that "[b]ecause there was no duty," there could be no breach of contract or negligence.

At a hearing on Hunt Irrigation's summary judgment motion in March 2018, Hunt Irrigation offered the affidavit of its owner, Jeremy Hunt (Jeremy), and a copy of Becher's complaint. In Jeremy's affidavit, he stated that, with respect to Becher's Surfside Drive home prior to his pipes allegedly freezing: (1) Hunt Irrigation never agreed to winterize Becher's sprinkler system, (2) there was "never any written or oral agreement" between the parties to provide winterization services, and (3) Becher did not schedule or request his company to provide such services. Jeremy claimed that at no time did Becher "ever pay for winterization services in 2013 at his [Surfside Drive] home." Hunt Irrigation also offered its attorney's affidavit, which had attached to it the written discovery previously issued to Becher.

In opposing the summary judgment motion, Becher offered his own affidavit and his answers to Hunt Irrigation's request for admissions. In Becher's affidavit, he claimed that during 2012, 2013, and 2014, he contracted with Hunt Irrigation for "sprinkler needs on several properties" he owns. The company had "always" taken care of the sprinklers on his properties and winterized them. Becher purchased his Surfside Drive home on January 13, 2013. He "specifically had conversations about the sprinkler system at [the] Surfside Drive [home] with Jeremy Hunt in the Summer of 2013" and believed "Hunt Irrigation did work on the sprinkler system" that summer. He "spoke with Hunt Irrigation in the Fall of 2013 to make certain that the home . . . was winterized" and "[t]hey promised it would be taken care of." In December, his sprinkler pipe at his home froze "because it was not winterized." Hunt Irrigation "never winterized" his home "as promised."

Among Hunt Irrigation's request for admissions, it asked Becher to admit that (1) he did not schedule winterization services for his Surfside Drive home for the fall of 2013 and (2) there was no oral contract or agreement for Hunt Irrigation to winterize the sprinkler system at that home for that same time. Becher denied each of those requests. But he admitted that there was no written contract or agreement for the company to winterize his home's sprinkler system for that time nor did he ever receive written confirmation from the company that it would winterize his property during that time.

The district court issued an order on April 6, 2018, sustaining Hunt Irrigation's motion for summary judgment. In addressing Becher's contract claim, it noted that to create a contract, there must be a meeting of the minds or a binding mutual understanding; this required that the terms and requirements of an agreement be definite and certain. It pointed out that the essential elements of a binding contract apply to both oral and written agreements, and the language which forms the basis of an alleged contract must be accepted and consideration furnished. Further, establishing a price or a method of arriving at a price is an essential element of a contract. The district court found

that there was "no allegation whatsoever that there was a meeting of the minds as to the price of the services sought." And although the parties allegedly did business with each other in the past relative to Becher's other real estate, there was "no evidence as to the pricing history, that it would have applied here, or even been relevant." The district court said it could not speculate about that issue. It found that "[s]ince price, or some evidence reflecting a meeting of the minds as to price" was a "necessary element," Becher did not meet his burden as to that element. It appeared to the district court that Becher's call, "assuming it was made, was a mere request for service." "While consumers and businesses use such methods constantly, those methods do not form the basis of an enforceable contract." And although not raised by Becher, the court, citing to promissory estoppel cases, rejected the possibility that when a contract is not formed because of a lack of consideration, reasonable reliance on the promise could still render the promisor liable for breach of the promise. The court concluded that Hunt Irrigation's motion for summary judgment should be sustained and Becher's contract claim should be dismissed.

The district court then analyzed Becher's negligence claim, stating that the Nebraska Supreme Court recently discussed the coexistence of tort and contract actions. It referred to *Lesiak v. Central Valley Ag Co-op*, 283 Neb. 103, 808 N.W.2d 67 (2012), saying that in that case, "the trial court granted summary judgment finding that the plaintiffs could only proceed under contractual theories of relief. On appeal, the Supreme Court held that 'a tort action is prohibited if the only damages suffered are economic losses.'" Still referencing *Lesiak v. Central Valley Ag Co-op*, the district court noted that when an alleged breach is of a purely contractual duty--a duty which arises only because the parties entered into a contract--only contractual remedies are available. The district court concluded Becher's negligence claim could not support the relief requested and could be disposed of as part of Hunt Irrigation's motion.

The district court granted Hunt Irrigation's motion for summary judgment and dismissed the case. Becher appeals.

## ASSIGNMENT OF ERROR

Becher claims, consolidated and restated, that the district court erred in granting Hunt Irrigation's motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Colwell v. Mullen*, 301 Neb. 408, 918 N.W.2d 858 (2018). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

At the outset, we note that Becher's complaint alleged breach of contract and negligence claims against Hunt Irrigation; however, on appeal, Becher does not assign error to or dispute the

district court's conclusion granting summary judgment in favor of Hunt Irrigation with regard to his negligence claim. Accordingly, finding no plain error, we will not address the negligence claim further. See *Werner v. County of Platte*, 284 Neb. 899, 824 N.W.2d 38 (2012) (absent plain error, assigned error not specifically assigned and specifically argued in brief is waived).

We now address Becher's breach of contract claim. Becher asserts that the facts show there is a genuine issue of material fact of "whether or not Hunt Irrigation promised to winterize [his] sprinkler system," brief for appellant at 7, specifically, "whether or not the parties agreed on the cost of services to be performed," *id*. at 9. He complains that the district court "assumed that the parties had not agreed on the price of Hunt Irrigation's services." *Id.* at 8. He contends the district court "provides an in depth recitation of the fact that no evidence was adduced regarding the price of Hunt Irrigation's services, but in doing so decides an issue of fact instead of giving all reasonable inferences to [Becher]." *Id*. at 9.

A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. *Wynne v. Menard, Inc.*, 299 Neb. 710, 910 N.W.2d 96 (2018). If the movant meets this burden, then the nonmovant must show the existence of a material issue of fact that prevents judgment as a matter of law. *Id*. When the parties' evidence would support reasonable, contrary inferences on the issue for which a movant seeks summary judgment, it is an inappropriate remedy. *Id*. Where reasonable minds could draw different conclusions from the facts presented, such presents a triable issue of material fact. See *id.* As the movant for summary judgment, Hunt Irrigation had the burden to prove that the alleged agreement did not exist or was otherwise unenforceable. To determine if it met that burden, we first review the law governing contractual agreements.

A contract may be express, implied, written, or oral. *Armstrong v. Clarkson College*, 297 Neb. 595, 901 N.W.2d 1 (2017). A party seeking to enforce a contract has the burden of establishing the existence of a valid, legally enforceable contract. *Houghton v. Big Red Keno*, 254 Neb. 81, 574 N.W.2d 494 (1998). To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015). A fundamental and indispensable basis of any enforceable agreement is that there be a meeting of the minds of the parties as to the essential terms and conditions of the proposed contract. *Id.* A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances. *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014).

A contract is not formed if the parties contemplate that something remains to be done to establish contractual arrangements or if elements are left for future arrangement. *Gibbons Ranches v. Bailey, supra*. See, *id.* (when express lease agreement contemplates payment of rent in money, amount of rent is essential term of agreement; agreement to agree on rent in future is not enforceable); *MBH, Inc. v. John Otte Oil & Propane*, 15 Neb. App. 341, 727 N.W.2d 238 (2007) (sales contract provision not enforceable when initially created because quantity and price of goods were not specified in contract). But see *McCaulley v. Nebraska Furniture Mart*, 21 Neb. App. 125,

838 N.W.2d 38 (2013) (buyers orally agreed to purchase furniture from store; during discussions, parties agreed to prices for each piece of furniture (totaling over $10,000) and buyers paid deposit on furniture).

As noted above, a contract is not formed if the parties contemplate that something remains to be done to establish contractual arrangements or if elements are left for future arrangement. See *Gibbons Ranches v. Bailey, supra*. In this case, even viewing the facts most favorably to Becher, the evidence shows only that Hunt Irrigation had taken care of other properties for Becher, and Becher had conversations with Jeremy in the summer of 2013 about the sprinkler system at a home Becher purchased in January of that year. Becher believed Hunt Irrigation worked on his home sprinkler system that summer, and in the fall, he spoke with "Hunt Irrigation" to make certain the home "was winterized." Becher claimed "[t]hey promised it would be taken care of." Becher admitted there was no written contract or agreement for Hunt Irrigation to winterize his home sprinkler system, nor did he ever receive written confirmation that they would winterize his property during that time; his claim is instead premised upon an oral agreement. However, despite Becher's allegation of an oral contract between Becher and Hunt Irrigation, Becher provided no evidence that a day and time were scheduled for the work to be performed, nor any agreement as to the cost for such services or Becher's agreement to pay those costs. As the district court observed, even assuming that Becher spoke with Hunt Irrigation regarding winterizing his home sprinkler system, it "was a mere request for service." And while such methods of initial contact are used between consumers and businesses frequently, "those methods do not form the basis of an enforceable contract."

In seeking to enforce any agreement, Becher would have the burden of establishing a valid and legally enforceable contract which requires as an essential element that consideration supported it (let alone that there was a meeting of the minds of the parties about Becher's owed consideration). See, *Irwin v. West Gate Bank,* 288 Neb. 353, 848 N.W.2d 605 (2014); *Peters v. Halligan*, 182 Neb. 51, 152 N.W.2d 103 (1967); *MBH, Inc. v. John Otte Oil & Propane, supra*. See, also, *De Los Santos v. Great Western Sugar Co.*, 217 Neb. 282, 348 N.W.2d 842 (1984) (mutuality of obligation is essential element of every enforceable agreement; mutuality is absent when only one contracting party is bound to perform and parties' rights exist at option of one only).

Becher pled that the parties contracted for Hunt Irrigation to service Becher's sprinkler system, that Hunt Irrigation failed to provide the service, and its breach caused damages in excess of $200,000. Although Becher pled the existence of a contract, he did not present evidence at the summary judgment hearing to support his allegations. See *Recio v. Evers*, 278 Neb. 405, 771 N.W.2d 121 (2009) (primary purpose of summary judgment procedure is to pierce allegations in pleadings and show conclusively that controlling facts are other than as pled; simply alleging issue of fact is insufficient to defeat motion for summary judgment, evidence must be presented to support allegations). Once Hunt Irrigation presented evidence that there was no agreement (claimed there was no written or oral agreement to winterize Becher's home, Becher did not schedule or request the company to provide such services, nor did Becher pay for such services), the burden of proof shifted to Becher to establish the existence of the essential elements of a contract. See *Wynne v. Menard, Inc.*, 299 Neb. 710, 910 N.W.2d 96 (2018). A fundamental and indispensable basis of any enforceable agreement is that there be a meeting of the minds of the

parties as to the essential terms and conditions of the proposed contract. *Gibbons Ranches v. Bailey, supra*. Although Becher presented evidence that Hunt Irrigation promised to winterize his home sprinklers, he did not present evidence to show any meeting of the minds of the parties as to the essential terms and conditions of the proposed contract, such as what services would be supplied, when they would be supplied, what the cost would be, and on what terms Becher would have to pay for those services. An assertion that Becher "spoke with Hunt Irrigation" about winterizing his sprinklers and that "[t]hey promised it would be taken care of," does not sufficiently establish the essential elements of a contract. A contract between Becher and Hunt Irrigation was not formed when specific terms and consideration for the services requested was left to be determined in the future. See, *Gibbons Ranches v. Bailey, supra*; *Peters v. Halligan, supra*. Merely making an initial contact with a service company about providing a service and getting an acknowledgement to provide that service does not, without more, create a binding mutual understanding as to the essential terms or conditions of the service to be provided. Therefore, Becher failed to show a genuine issue of material fact remained in dispute as to the existence of an express, written, or oral contract based simply upon his allegations that he "spoke with Hunt Irrigation in the Fall of 2013" about winterizing his residential property and "[t]hey promised it would be taken care of."

Becher contends, however, that the past and continued business relationship of the parties is evidence that he knew how much Hunt Irrigation charged for their services and that he agreed to pay it when the services were performed. He suggests this was a reasonable inference that the district court should have drawn. Becher appears to be claiming the existence of an implied contract based on past conduct and dealings with Hunt Irrigation. An implied in fact contract arises where the intention of the parties is not expressed in writing but where the circumstances are such as to show a mutual intent to contract. *Armstrong v. Clarkson College*, 297 Neb. 595, 901 N.W.2d 1 (2017). Sometimes, a court can also ascertain the meaning of a party's promise by referring to the parties' course of dealing with each other, or a general reasonableness standard. *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011).

But unless the parties have stated otherwise in an express agreement, extrinsic standards can only provide a basis for understanding a contract. *Id.* The circumstances must still show that the parties manifested an intent to be bound by a contract. *Id.* And their manifestations are usually too indefinite to form a contract if the essential terms are left open or are so indefinite that a court could not determine whether a breach had occurred or provide a remedy. *Id.* For example, if the parties' manifestations or conduct shows that they do not intend to be bound by a contract unless they agree upon the price for services and they fail to agree, there is no contract. See *id.*

Even when considering the facts presented here under a theory of implied contract based on the parties' alleged past course of dealing with each other, we conclude that Becher failed to set forth sufficient facts to overcome summary judgment, as we discuss next.

Where an implied in fact contract exists, its terms may be shown by the surrounding facts and circumstances giving rise to the contract, the conduct of the parties when performing under the contract, or a general reasonableness standard. *Id*. The determination of the parties' intent to make a contract is to be gathered from objective manifestations--the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction.

*Donut Holdings v. Risberg*, 294 Neb. 861, 885 N.W.2d 670 (2016). If the parties' conduct is sufficient to show an implied contract, it is just as enforceable as an express contract. *Id*. Here, the evidence would have to show that Becher's past course of dealing with Hunt Irrigation in 2012 and 2013 for his other properties was sufficient to create a mutual understanding between Becher and Hunt Irrigation that both parties intended to contract when Becher "spoke with Hunt Irrigation" to winterize his newly purchased residence and "[t]hey" promised to do so.

We first consider what conduct establishes a course of dealing. The Restatement (Second) of Contracts § 223 at 157-58 (1981), provides:

> (1) A course of dealing is a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.
> (2) Unless otherwise agreed, a course of dealing between the parties gives meaning to or supplements or qualifies their agreement.

(Emphasis omitted.)

To satisfy that there was a course of dealing in this case, the facts would have to establish a "sequence of previous conduct" between Becher and Hunt Irrigation to show that it was only necessary for Becher to make a request for sprinkler winterization by generally contacting Hunt Irrigation, and that such contact was sufficiently understood by both parties to create an obligation by Hunt Irrigation to provide such services for Becher and for Becher to pay an undetermined charge. In other words, based on the previous course of conduct by the parties, it was unnecessary for the parties to have any discussion about the details of when the service would be provided, the extent of the service provided, what the cost for the service would be, and when payment was due; these terms would be mutually understood by the parties based on their prior course of dealing with each other.

In *Bloomfield v. Nebraska State Bank*, 237 Neb. 89, 465 N.W.2d 144 (1991), the Nebraska Supreme Court considered whether a past course of dealing between a farmer and a bank amounted to an implied contact. As relevant here, the farmer in that case filed a breach of contract action against the bank as a result of the bank not renewing the farmer's line of credit like it had done before. The farmer started banking with the bank in January 1982 and had promissory notes renewed in May 1982, January 1984, and December 1984. One of the farmer's three outstanding loans with the bank was due in February 1985. The farmer claimed he had signed several notes with the bank and when the notes could not be paid when due, he would get the notes extended, usually for a term of 6 months. To get the additional financing, the farmer would complete financial statements for the bank, usually annually. In January 1985, the farmer signed a new security agreement, and it was at that time a loan officer from the bank told the farmer he had been a good customer and that there would be no problem extending him credit. The loan officer did not promise to extend the farmer's loan or issue new loans, but the farmer nevertheless understood this to mean his loan would be extended as it had in past dealings with the bank. However, the next month, the bank called the farmer's loan, assigned certain assets belonging to the farmer to the farmer's existing debt, and filed a replevin action to obtain the farmer's equipment, cattle, and

grain to pay off the farmer's indebtedness. The farmer's lawsuit against the bank was dismissed at the close of his case.

When considering the farmer's appeal, the Nebraska Supreme Court stated that the question was whether the bank breached a contract arising from a course of dealing of providing the farmer with operating capital from year to year as he needed it. The court noted that the farmer admitted the loan officer made no promise about extending credit for 1985 and beyond, and there was no discussion between them about the amount of money the bank might loan, what the interest rate would be, the size of any possible loan, the nature or amount of collateral that would be required to be pledged, or the term of any such possible loan. The Supreme Court pointed out that the express terms of the contract (i.e., the note) gave the bank the right to call the loan when the farmer was in default. But it considered the farmer's argument that the course of dealing between the parties made it reasonable for him to expect that the past-due promissory note would be renewed. Referring to the Nebraska Uniform Commercial Code, the Supreme Court described a course of dealing as we have set forth above from the Restatement (Second) of Contracts. The Supreme Court went on to say that "[t]his amounts to a claim that there was an implied contract between [the farmer] and [the bank] to continue to renew notes without payment so long as [the farmer] desired credit." *Bloomfield v. Nebraska State Bank*, 237 Neb. at 95, 465 N.W.2d at 148. "However, to have an implied contract there must be evidence of mutual intent; without such evidence there cannot be an implied contract." *Id*. The Supreme Court observed that there had only been two note renewals prior to the note renewal at issue, and "[t]wo note renewals over a 3-year period of doing business can hardly establish a course of dealing to automatically renew mature promissory notes without payment. A promise or mutual intent to indefinitely renew [the farmer's] promissory notes cannot be inferred from the parties' course of conduct in this instance." *Id*.

We are presented with a similar situation in this case in that the facts presented do not support an implied contract based upon the past course of dealing between the parties; Becher's vague allegation of having contracted with Hunt Irrigation to winterize his other properties for one, maybe two, winters (2012, 2013) cannot be said to establish a course of dealing from which Hunt Irrigation should have understood it was to continue providing services to Becher on the same terms previously agreed upon--the terms of which are unknown. Becher does not allege any facts to indicate what the common basis of understanding was with regard to Becher's past dealings with Hunt Irrigation, much less how any understanding about those past services should apply to Becher's new request for services to his residential property. Becher simply claimed he had contracted with Hunt Irrigation in 2012 and 2013 for sprinkler needs on other properties, and that Hunt Irrigation winterized his properties previously. Becher provided no further information related to how he contracted with Hunt Irrigation to perform such services, including who he was to contact to engage such services, what terms were agreed upon for providing those services, and whether the contracted terms were for a definite term or indefinite term. Notably, Becher does not allege that he had any understanding with Hunt Irrigation, by way of past dealings, that generally contacting "Hunt Irrigation" and speaking with anyone there, regardless of that person's authority to bind the company, was the accepted and mutually understood method of binding Hunt Irrigation to provide the services requested and binding Becher to pay for them. As the Supreme Court stated, "[T]o have an implied contract there must be evidence of mutual intent." *Bloomfield v. Nebraska*

*State Bank*, 237 Neb. at 95, 465 N.W.2d at 148. See, also, *Tilt-Up Concrete v. Star City/Federal*, 255 Neb. 138, 582 N.W.2d 604 (1998) (mutual assent to contract is determined by objective manifestations of intent by parties, not by their subjective statements of intent).

Even construing the facts most favorably to Becher, the record does not support that there was an implied contract between the parties based simply upon Hunt Irrigation providing winterization services to Becher's other properties in 2012 and 2013. Becher did not offer evidence of the prior transactions, such as related invoices, receipts, checks, or how those services were scheduled and confirmed, or how the charges were determined. As the district court indicated, there was nothing to tie the service of Becher's other properties to Becher's recently purchased residential property. In this instance, evidence about the essential terms of any agreement, express or implied, were either nonexistent or indefinite. See *Stitch Ranch v. Double B.J. Farms*, 21 Neb. App. 328, 837 N.W.2d 870 (2013) (it is fundamental rule that in order to be binding, agreement must be definite and certain as to terms and requirements). Becher failed to present evidence to rebut that there was no genuine issue of material fact in dispute on his breach of contract claim against Hunt Irrigation.

CONCLUSION

We agree with the district court that Hunt Irrigation was entitled to judgment as a matter of law. Therefore, we affirm the district court's order granting summary judgment in favor of Hunt Irrigation.

AFFIRMED.